**Vincent L. PRYNER,**
**Plaintiff/Counterclaim–Defendant,**

v.

**TRACTOR SUPPLY COMPANY, INC.,**
**Defendant/Counterclaim–Plaintiff.**

**No. IP 95–211–C–T/G.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 28, 1996.

---

Bobby Allen Potters, Indianapolis, IN, for Plaintiff.

Charles W. Pautsch, Wessels & Pautsch, Milwaukee, WI, for Defendant.

**Entry Regarding Defendant's Motion for Summary Judgment or, In the Alternative, to Stay Proceedings Pending Arbitration**

TINDER, District Judge.

This matter comes before the court upon Defendant Tractor Supply Company's ("TSC") motion for summary judgment or, in the alternative, motion to stay proceedings pending arbitration. The court, having considered the motion and the submissions of the parties, finds that the Defendant's motion for summary judgment with respect to the remainder of the Plaintiff's claims or, in the alternative, to stay the proceedings pending arbitration should be **DENIED** for the reasons set forth below.

## I. Background Facts and Procedural History

The Plaintiff, Vincent L. Pryner ("Pryner"), was employed by TSC at its warehouse facility in Indianapolis, Indiana from September 13, 1985 until his termination on February 22, 1996. Following a sixty-day probationary period at the beginning of his employment, the terms and conditions of Pryner's employment have been governed by a succession of collective-bargaining agreements ("CBA") between TSC and Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135 (the "Union"). Details of Pryner's early work history were not provided, but there were no indications of any problems until Pryner's allegations that he had been subjected to a racially-hostile work environment since January 1992.

The CBA relevant to the period at issue in the case at bar contains a "Grievance and Arbitration Procedure" for the resolution of any disputes "involving interpretation or application of the provisions of this Agreement." (Def.'s Ex. 3 at 14.) Said procedure provides for a three step grievance adjustment process followed by arbitration which is "final and binding on both parties." (*Id.* at 16.) The CBA also contains the following "miscellaneous" provisions relevant to the instant inquiry:

*Section 2—No Discrimination*

The Company agrees that it will not discriminate against any associate for employment for or on account of his affiliation or activities with the Union. The Company and Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of an individual's race, color, religion, age, sex, or national origin. Nor will the Company limit, segregate or classify associates in any way to deprive any individual associate of employment opportunities because of race, color, religion, age, sex, veteran or national origin.

*Section 3—The Americans With Disabilities Act (ADA)*

Due to the Americans with Disabilities Act or the regulations promulgated thereunder, the Company may be required to make a reasonable accommodation to the disability of an applicant or incumbent associate that may be in conflict with provisions of this Agreement. In such event, the Company shall be privileged to make such accommodation notwithstanding the requirements of this Agreement. The Company shall notify the Union thereafter as soon as is practicable of such situation on a confidential basis.

(*Id.* at 25.)

On February 17, 1995, Pryner filed the instant complaint against TSC, which was amended with leave of the court on July 12, 1995. Count I of the amended complaint alleges that TSC discharged Pryner from his employment on the basis of his race in viola-

tion of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981; Count II alleges that Pryner was discharged from his employment on the basis of his disability in violation of the ADA; and Count III alleges that TSC retaliated against Pryner for having filed a complaint of discrimination, also in violation of Title VII.[1] In its answer, TSC counterclaimed that Pryner and James A. Motley, another TSC employee, conspired to deprive various TSC employees of the equal protection of the laws in violation of 42 U.S.C. § 1985(3).

On April 4, 1994, the Defendant moved for summary judgment or, in the alternative, a stay of the instant action pending arbitration of the Plaintiff's complaints, on the ground that the mandatory arbitration provisions of the CBA divest this court of subject matter jurisdiction in this case. The matter has been fully briefed and is now ripe for adjudication.

## II. Summary Judgment Standard

 The Seventh Circuit stated the standard for summary judgment in *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

Fed.R.Civ.P. 56(c) provides that a district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When the facts are disputed, the parties must produce proper documentary evidence to support their contentions, and may not rest on mere allegations in the pleadings, *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985). In reviewing a grant of summary judgment, all reasonable inferences from the evidence presented must be drawn in favor of the opposing party. *Matsushita Elecs. Indus. Co., Ltd. v. Ze-*

*nith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).... The mere existence of a factual dispute will not bar summary judgment unless "the disputed fact is outcome determinative under governing law." *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

*Id.* at 642.

 The Supreme Court further clarified the scope of Federal Rule of Civil Procedure 56 in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex*, the Court held that the initial burden is on the moving party to demonstrate "with or without affidavits" the absence of genuine issues of material fact and that, absent such material facts, judgment should be granted as a matter of law in the moving party's favor. 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the moving party has met its burden, the opposing party must "go beyond the pleadings" and designate specific facts to support or defend each element of the claim, demonstrating a genuine issue for trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Becker v. Tenenbaum–Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). Not every factual dispute creates a barrier to summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## III. Discussion

 The crux of the Defendant's argument is that the decision of the United States Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), requires a finding that Pryner's sole remedy in this proceeding is the arbitration to which he agreed in the CBA. In support of this argument, the De-

---

1. It is expected that the Plaintiff will again move to amend his complaint to include a count regarding his most recent discharge. However, said event is not presently before the court.

fendant points to the recent decision of the Court of Appeals for the Fourth Circuit in *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996).

In addressing this issue, the court must begin with the Supreme Court's unanimous decision in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Gardner–Denver*, the plaintiff, an African–American union member employed pursuant to a collective-bargaining agreement, claimed that his discharge by the defendant was the result of racial discrimination. The plaintiff initially filed a grievance under the broad arbitration provisions of his collective-bargaining agreement. Prior to the arbitration hearing, the plaintiff filed a charge of racial discrimination with the Colorado Civil Rights Commission, which referred the complaint to the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 38–42, 94 S.Ct. at 1015–17.

The arbitrator ruled that the plaintiff had been "discharged for just cause." Thereafter, the EEOC determined that no reasonable cause existed to support a finding that any violation of Title VII had occurred and issued the plaintiff a right to sue letter. The plaintiff subsequently filed an action in federal court alleging that his discharge had resulted from a racially-discriminatory employment practice in violation of Title VII. *Gardner–Denver*, 415 U.S. at 42–43, 94 S.Ct. at 1016–17.

The district·court granted the defendant's motion for summary judgment and dismissed the action. "The court found that the claim of racial discrimination had been submitted to the arbitrator and resolved adversely to [the plaintiff]. It then held that [the plaintiff], having voluntarily elected to pursue his grievance to final arbitration under the nondiscrimination clause of the collective-bargaining agreement, was bound by the arbitral decision and thereby precluded from suing his employer under Title VII." *Gardner–Denver*, 415 U.S. at 43, 94 S.Ct. at 1017. The Tenth Circuit affirmed the decision of the district court. *Id.*

In reversing, the Supreme Court noted that the grievance procedure in the collective-bargaining agreement was intended to vindicate the plaintiff's *contractual* rights, while Title VII created an independent *statutory* right to be free from racial discrimination. *Gardner–Denver*, 415 U.S. at 49–50, 94 S.Ct. at 1020–21. The Court then stated that "[t]he distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." *Id.* at 50, 94 S.Ct. at 1020. The Court held that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective bargaining agreement and his cause of action under Title VII." *Id.* at 59–60, 94 S.Ct. at 1025.

The next major element in the analysis is the Court's subsequent decision in *Gilmer*. In *Gilmer*, the plaintiff was required, by his employer, to register as a securities representative with, among others, the New York Stock Exchange ("NYSE"). The plaintiff's registration application with the NYSE contained an agreement to arbitrate when so required by the NYSE rules and those rules provided for arbitration of any controversy arising out of a registered representative's employment or termination of employment. 500 U.S. at 23, 111 S.Ct. at 1650–51.

The defendant terminated Gilmer at age sixty-two. Thereafter, Gilmer filed a charge with the EEOC alleging that he had been discharged because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). The defendant moved to compel arbitration of the matter in accordance with the arbitration agreement in Gilmer's NYSE registration application and the Federal Arbitration Act ("FAA"). Relying upon *Gardner–Denver*, the district court denied the defendant's motion and the Court of Appeals for the Fourth Circuit reversed. *Gilmer*, 500 U.S. at 23–24, 111 S.Ct. at 1650–51.

In affirming the decision of the Fourth Circuit, the Supreme Court first noted that

statutory claims may be the subject of an arbitration agreement enforceable under the FAA and that, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." [2] *Gilmer,* 500 U.S. at 26, 111 S.Ct. at 1652 (quotation omitted). Consequently, because Gilmer had agreed to arbitrate his statutory claims, the Court found that, in order to avoid said arbitration clause, the burden was upon the plaintiff to demonstrate that Congress intended to preclude the waiver of a judicial forum for the statutory claim—ADEA—in question. *Id.* The Court held that Gilmer had failed to meet his burden of demonstrating that "Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act." *Id.* at 35, 111 S.Ct. at 1657. Accordingly, the Court found that the arbitration agreement in Gilmer's NYSE registration application should be enforced. *Id.*

Completing the analysis is the Fourth Circuit's recent decision in *Austin.* In *Austin,* the plaintiff, a union employee governed by a collective-bargaining agreement, was injured in a job-related accident after fourteen years in the defendant's employ. Thereafter, the plaintiff was released for light-duty work, but was told that none was available. Instead, she was placed on leave and provided with worker's compensation benefits. While Austin was on leave, the defendant eliminated her position and terminated her employment. 78 F.3d at 877.

Austin filed suit against the defendant alleging violation of both Title VII and the ADA. The defendant moved to dismiss on the grounds that Austin was precluded from filing suit in federal court because she was bound by the mandatory arbitration clause of her collective-bargaining agreement. *Austin,* 78 F.3d at 878. The district court agreed and found that *Gilmer* precluded Austin from bringing the lawsuit because she had agreed in her collective-bargaining agreement to resolve the dispute via binding

arbitration. *Id.* A divided panel of the Fourth Circuit affirmed. *Id.* at 886.

Clearly, if the decision of the Fourth Circuit is a correct pronouncement of federal law, then the instant case must be dismissed, because Pryner's sole remedy for the discrimination claimed would be pursuant to the arbitration clause in the CBA. However, it is the court's assessment that *Austin* is not an accurate interpretation of federal law as it presently stands and that the reasoning of the majority in that case would not be adopted by the Seventh Circuit if faced with a similar case.

*Austin* relies primarily upon *Gilmer's* holding that an individual may agree to arbitrate statutory claims, such as those found in the instant case. The fatal flaw in *Austin* is its failure to fully consider the prior holding of *Gardner–Denver.* The *Austin* court basically dismisses the decision in *Gardner–Denver* by stating that "*Gilmer* thus rejects the principal concern in ... *Gardner–Denver* ..., that arbitration is an 'inappropriate forum' for the resolution of Title VII statutory rights." *Austin,* 78 F.3d at 880.

It is uncontroverted that the decision in *Gardner–Denver* reflected the Court's then-current view that arbitration was inferior to judicial process for the resolution of statutory claims. *Gardner–Denver,* 415 U.S. at 56–58, 94 S.Ct. at 1023–25. Such "mistrust of the arbitral process" has plainly been overcome by more recent decisions of the Court. *Gilmer,* 500 U.S. at 34 n. 5, 111 S.Ct. at 1656 n. 5 (citing *Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220, 231–32, 107 S.Ct. 2332, 2340–41, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626–27, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution.")).

While *Austin's* recognition that the Court's acceptance of arbitration has progressed significantly since its decision in *Gardner–Den-*

---

**2.** For the purposes of the instant entry, the court will assume without deciding that Pryner, in his individual capacity, could agree to arbitrate all of the statutory claims which he has brought in this action.

**1146**

*ver,* the *Austin* Court's reliance upon *Gilmer* to the exclusion of *Gardner–Denver* is clearly misplaced. *Gilmer* made a point of distinguishing, not overruling, *Gardner–Denver,* see 500 U.S. at 33–35, 111 S.Ct. at 1655–57, and the continuing vitality of *Gardner–Denver* was recognized by the Court even more recently in *Livadas v. Bradshaw,* 512 U.S. 107, —— n. 21, 114 S.Ct. 2068, 2080 n. 21, 129 L.Ed.2d 93 (1994).

■ The *Gilmer* Court distinguished *Gardner–Denver,* and its progeny,[3] on three grounds, only two of which are applicable in the instant case. First, the Court again noted that an employee's contractual rights under a collective-bargaining agreement are distinct from said employees statutory rights. 500 U.S. at 34, 111 S.Ct. at 1656; *see also In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 852 F.2d 960, 965 (7th Cir.1988). This recognizes one of the classic differences between an individual employment contract between an employee and his or her employer and the contract created by a collective-bargaining agreement. While an individual may surrender any of his or her statutory rights unless Congress has expressed the intent that a particular right cannot be surrendered, in the context of a collective-bargaining agreement, the rights at issue are solely those articulated within the confines of the agreement itself. In other words, while an individual employment contract can address both contractual and statutory rights, a collective-bargaining agreement, by its very nature, may only address the contractual rights of the members of the bargaining unit. "Thus the arbitrator has authority to resolve

only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." [4] *Gardner–Denver,* 415 U.S. at 53–54, 94 S.Ct. at 1022. The Court continues to recognize this dualism, even in light of its greater acceptance of the arbitral process.[5] *See, e.g., Livadas,* 512 U.S. at —— n. 21, 114 S.Ct. at 2080 n. 21; *Gilmer,* 500 U.S. at 34, 111 S.Ct. at 1656.

The *Gilmer* Court next expressed its continuing "concern that in collective-bargaining arbitration the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." 500˙ U.S. at 34, 111 S.Ct. at 1656 (citation and quotation omitted); *see Livadas,* 512 U.S. at —— n. 21, 114 S.Ct. at 2080 n. 21. The Court has also recognized that "harmony of interest between the union and the individual employee cannot always be presumed, especially where a claim of racial discrimination is made.... And a breach of the union's duty of fair representation may prove difficult to establish." *Gardner–Denver,* 415 U.S. at 58 n. 19, 94 S.Ct. at 1024 n. 19. The Court's recent jurisprudence has done nothing to alleviate this concern.

The final distinction drawn by the court between the situation it faced in *Gilmer* and that in *Gardner–Denver* was that *Gardner–Denver* and its progeny were not decided under the FAA, while *Gilmer* was. *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1656–57. Likewise, the decision in *Austin* did not consider the effects of the FAA because the Fourth

---

3. The *Gilmer* Court recognized *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) and *McDonald v. City of West Branch, Mich.,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) as other cases which have involved the issue whether arbitration under a collective bargaining agreement precluded a subsequent statutory claim. *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1656–57.

4. For this reason, it is essentially immaterial that the CBA at issue appears to provide for rights similar or identical to those provided for in Title VII, the ADA or section 1981. The court notes that similar provisions, with the exception of the ADA, were found in the collective-bargaining agreement at issue in *Gardner–Denver,* 415 U.S. at 39, 94 S.Ct. at 1015.

5. *Gilmer* noted as follows:

"[A] labor arbitrator has authority only to resolve questions of contractual rights. The arbitrator's task is to effectuate the intent of the parties and he or she does not have the general authority to invoke public laws that conflict with the bargain between the parties. By contrast, in instituting an action under Title VII, the employee is not seeking review of the arbitrator's decision. Rather, he is asserting a statutory right independent of the arbitration process.
500 U.S. at 34, 111 S.Ct. at 1656 (citations and quotations omitted).

Circuit takes the position that the FAA is not applicable to labor disputes arising from collective-bargaining agreements. 78 F.3d at 879. It is relative to this third factor that the instant case diverges from the situation in *Gardner–Denver*.

■ The FAA basically effectuates arbitration agreements brought before federal courts, and it reflects a "liberal federal policy favoring arbitration agreements...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *accord Mitsubishi*, 473 U.S. at 625, 105 S.Ct. at 3353. The Fourth Circuit does not apply the FAA to collective-bargaining agreements because of the FAA's exclusion from coverage of "contracts of employment of ... any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Seventh Circuit "is among the minority that has limited § 1 to the transportation industries and therefore applies the Arbitration Act to most collective bargaining agreements." *Briggs & Stratton Corp. v. Local 232, Int'l Union, Allied Indus. Workers of Am.*, 36 F.3d 712, 715 (7th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1998, 131 L.Ed.2d 1000 (1995); *accord Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 n. 3 (7th Cir.1995); *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1162 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); *Pietro Scalzitti Co. v. International Union of Operating Eng'rs, Local No. 150*, 351 F.2d 576, 579–80 (7th Cir.1965); *see also American Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466, 473 (11th Cir.1987). It has not been suggested that Pryner is employed in the transportation industry. However, even assuming that the provisions of the FAA apply to the instant case, sufficient reason does not exist to depart from the clear dictates of *Gardner–Denver*.

■ The court notes that the purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer*, 500 U.S. at 24, 111 S.Ct. at 1651 (citations omitted). *But see Farrand v. Lutheran Bhd.*, 993 F.2d 1253, 1255 (7th Cir.1993) ("*Gilmer* did not establish a grand presumption in favor of arbitration; it interpreted and enforced the texts on which the parties had agreed."). Nevertheless, the reasons cited by the Court for its decision in *Gardner–Denver* remain, regardless of the Court's renewed acceptance of arbitration clauses as stated in *Gilmer*. The Court's recognition of the dualism between the contractual rights governed by a collective-bargaining agreement and the statutory rights which flow to each individual within the collective bargaining unit is unchanged. Likewise, the Court's concern regarding the motivations of the union as the representative of the individual members of the bargaining unit when it comes to the enforcement of individual statutory rights also remains. Accordingly, although the instant case may be governed by the FAA, this court remains bound by the decision in *Gardner–Denver*, a decision which dictates that the existence of a possible remedy to Pryner under the CBA does not foreclose Pryner's right to pursue the statutory claims brought in the present litigation. This result is in accord with a number of other courts which have addressed this issue after the *Gilmer* decision. *See, e.g., EEOC v. Board of Governors of State Colleges and Univs.*, 957 F.2d 424, 431 & n. 11 (7th Cir.) (citing *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1656–57) ("[I]t is well established that unions cannot waive employees' ADEA or Title VII rights through collective bargaining."), *cert. denied*, 506 U.S. 906, 113 S.Ct. 299, 121 L.Ed.2d 223 (1992); *DiPuccio v. United Parcel Serv.*, 890 F.Supp. 688, 692–93 (N.D.Ohio 1995); *Randolph v. Cooper Indus.*, 879 F.Supp. 518, 520–23 (W.D.Pa.1994); *Block v. Art Iron, Inc.*, 866 F.Supp. 380, 383–87 (N.D.Ind.1994); *Griffith v. Keystone Steel & Wire Co.*, 858 F.Supp. 802, 804 (C.D.Ill.1994); *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 144–47 (D.Conn.1993); *see also Austin* 78 F.3d at 886–87 (Hall, J., dissenting). *But see Austin*, 78 F.3d at 877–86, *aff'g*, 844 F.Supp. 1103 (W.D.Va.1994); *Knox v. Wheeling–Pittsburgh Steel Corp.*, 899 F.Supp. 1529, 1536–40 (N.D.W.Va.1995).

### IV. Conclusion

For the reasons stated above, the court finds that neither Pryner's prior arbitration under his CBA of the claims he now brings before the court nor his failure to previously arbitrate said claims has any bearing upon his right to enforce the statutory rights he now asserts. Accordingly, the Defendant's motion for summary judgment on this issue will be **DENIED.** Likewise, the Defendant's motion in the alternative to stay the instant proceedings pending the arbitration of Pryner's claims under the CBA will also be **DENIED.**

ALL OF WHICH IS ORDERED.