**Vincent Lee HILL, Plaintiff,**

v.

**AMERICAN NATIONAL CAN COMPANY/FOSTER FORBES GLASS DIVISION, et al., Defendants.**

**Civil Action No. 3–95–CV–2385–R.**

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 9, 1996.

Kenneth H. Molberg, Wilson Williams Molberg & Mitchell, Dallas, TX, for Vincent Lee Hill.

Arlene Switzer Steinfield, Thompson & Knight, Dallas, TX, J. Jeffrey Zimmerman, Barry A. Hartstein, Jenner & Block, Chicago, IL, for American Nat. Can Co.

Arlene Switzer Steinfield, Thompson & Knight, Dallas, TX, Barry A. Hartstein, Jenner & Block, Chicago, IL, for Ball–Foster Glass Container Company LLC.

## ORDER

BUCHMEYER, District Judge.

After making an independent review of the pleadings, files and records in this case, and the Findings, Conclusions and Recommendation of the United States Magistrate Judge, I am of the opinion that the Findings and Conclusions of the Magistrate Judge are correct and they are adopted as the Findings and Conclusions of the Court.

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

BOYLE, United States Magistrate Judge.

Pursuant to the District Court's Order of Reference, filed May 31, 1996, came on to be considered **Defendants' Joint Motion to Dismiss**, filed May 17, 1996. At issue is whether the district court lacks subject matter jurisdiction over plaintiff's ADA claim due to plaintiff's failure to exhaust the grievance procedure set out in his union's collective bargaining agreement. Finding that the collective bargaining agreement involved in this case does not require exhaustion prior to filing an individual ADA claim, the undersigned **RECOMMENDS** that the Defendants' Motion be **DENIED** for the following reasons:

## I. BACKGROUND [1]

Vincent Lee Hill ("Hill"), brings this action under the American's With Disabilities Act of

---

1. The following facts are taken from Plaintiff's Second Amended Complaint and the Supplemen-

1990, 42 U.S.C. § 12101, *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981(a). In his Second Amended Complaint, Hill alleges that the Defendants have unlawfully discriminated against him on the basis of his disability.

Hill's purported disability developed in May of 1990, when he was allegedly injured while working for the Foster–Forbes Glass Division of the American National Can Company. After his physician certified that he was able to return to work, Hill recommenced his employment on September 14, 1994. Hill worked eight hour shifts the week of September 14–18, 1994, until a human resources manager discovered that Hill was under medication during working hours. Defendants instructed Hill not to return to work until he terminated the use of the medications.

Hill is a member of the Glass, Molders, Pottery, Plastics & Allied Workers' International Union (the "Union"). The Union and the Defendants signed one collective bargaining agreement effective from April 4, 1993 until March 31, 1996 and another effective April 1, 1996 until March 31, 1999 (the "CBA"). The CBA contains the following provisions:

### ARTICLE 26

#### Grievance Procedure

Section 1. The purpose of Article is to provide an orderly method for the settlement of all grievances.

If a representative of management fails to give his answer within the time limits specified in any step of the grievance procedure, the grievance may be processed to the next step of the grievance procedure within the time limits set forth in such step.

Grievances shall be presented and processed in accordance with the following steps:

Step 1: If an employee has a grievance, he shall within three (3) working days from the date the grievance arises, present it to his immediate supervisor and shop steward for discussion and settlement. The supervisor shall give the employee his decision on the grievance within three (3) working days after it has been presented to him.

Step 2: If the grievance is not settled in Step 1, the employee and shop steward may refer the matter to the Business Committee for investigation. If the Committee considers the grievance just, it shall reduce all facts concerning the grievance to writing, and present it to the employee's department head for discussion and settlement within seven (7) days after the completion of Step 1.

In reducing the grievance to writing, the Business Committee shall set forth with reasonable clearness the nature of the act or acts on which the grievance is based, the time when such acts occurred, the identity of the jobs and employees covered by the grievance, the provisions of the Contract which have been violated, and the remedy requested.

The employee's department head shall answer within seven (7) days after the grievance has been presented to him and his answer shall set forth in written detail and with reasonable clearness the facts and provisions of the Contract on which has decision is based.

If the grievance is appealed to the next step of the grievance procedure, the basis of such appeal shall be set forth in writing by the appealing party. The answer of the other party shall also be set forth in writing.

Step 3: If the grievance is not settled in Step 2, the Business Committee shall discuss the matter with the International Representative of the Union and they shall, within fifteen (15) days after receiving the Company's reply in Step 2, meet with appropriate Company representatives for discussion and settlement of the grievance. The Company shall give the International Representative of the Union and the Local Union its decision on the griev-

tal Documents in Support of Defendants' Joint Motion to Dismiss. All of these facts are uncontroverted.

ance in writing within seven (7) days after the meeting.

Step 4: If a grievance is not settled in Step 3 of the grievance procedure, the International Representative shall, within seven (7) days after receiving the decision of the Plant Manager or his designated representative refer the matter to the International President of the Union or his designated representatives and the Vice President Human Resources of the Company or his designated representative, for discussion and settlement. This step shall be concluded fifteen (15) days after the date on which the grievance is referred to the International President of the Union and the Vice President human Resources of the Company or their designated representatives, except that this step may be extended for not more than fifteen (15) days by written notice to one party or the other.

Grievances involving discharge which are not settled in Step 1 of the Grievance Procedure may be referred in writing, by the Union within three (3) working days following completion of Step 1, directly to Step 3 of the Grievance Procedure for discussion and settlement. Following referral to Step 3, the matter shall be handled to conclusion at Step 3 within fifteen (15) days, except that this period may be extended for not more than fifteen (15) days by written notice by one party to the other. If the grievance is not settled, as provided above, it shall be referred to Step 4 of the Grievance Procedure.

Section 2. Grievances involving the administration of incentive systems may not be filed until after a reasonable trial period.

Section 3. It is not the function or right of the Company, or any Local Union and its officers or the officers of the International Union, to change this Contract.

Section 4. All grievance settlements involving pay will be made as soon as possible, but no later than seven (7) days from the date of the settlement. However, an additional period of time will be granted in the event of unusual or extenuating circumstances.

## ARTICLE 27

### Arbitration

Section 1. All disputes not settled pursuant to the procedure set forth in Article 26, GRIEVANCE PROCEDURE, may be referred to arbitration by notice given to the Company by the Union within ten (10) days after the conclusion of Step 4 of the Grievance Procedure. Such notice shall be in writing, setting forth the matter in dispute and relief requested.

The notice shall also be sent to the American Arbitration Association requesting that within seven (7) days of the receipt of such notice an identical list of arbitrators containing an odd number of not less than seven (7) arbitrators be sent to the Company and the Union. After receipt of the list of arbitrators from the American Arbitration Association, the Vice President Human Resources of the Company or his designated representative and the President of the International Union or his designated representative shall alternatively strike one name from the list of arbitrators supplied until only one name remains. The arbitrator whose name remains shall be the arbitrator in the case involved. The right to strike the first name shall be determined by lot. In the conduct of the arbitration hearing, the applicable provisions of the Voluntary Labor Arbitration rules of the American Arbitration Association shall control.

Section 2. The arbitrator shall not have the authority to alter, modify, add to, or subtract from any of the terms or provisions of this Agreement. Wage rate and job evaluation disputes shall be processed in accordance with Article 39, WAGE STRUCTURE PLAN. The decision of the arbitrator shall be final and binding on the company and the Union.

## ARTICLE 31

### Fair Employment practices and Equal Opportunities

The Company and the Union agree that there shall be no discrimination against any employee because of race, color, creed,

national origin, age, sex, disability, or veteran status.

## ARTICLE 33

### Disabled Employees

Section 1. Employees disabled by reason of physical disabilities or infirmities shall, upon agreement between the proper Grievance Committee and the Management, receive a special rate so as to provide work for them.

Section 2. An employee who is disabled by reason of occupational injury or illness and who is unable to work his regular job will be placed on any job acceptable to him which he is qualified to perform in line with his seniority (and qualifications), at a rate commensurate with the work performed.

Section 3. The contract shall be administered in accordance with the applicable provisions of the Americans with Disabilities Act. Before taking any action relative to this Section, the company will meet with the Local Union and both parties will have sufficient opportunities to express their opinions regarding an anticipated action. **Supplemental Docs. in Supp. of Defs.' Joint Mot. to Dismiss, Ex. 1, arts. 26, 27, 31, 33.**

In response to the Defendants' order forbidding Hill to return to work while medicated, Hill filed a grievance with his Union on November 28, 1994 pursuant to the procedures set out in the CBA. On December 2, 1994 the Company denied Hill's grievance at the second step of the grievance procedure. Hill then filed a disability discrimination charge with the EEOC on February 7, 1995. On September 15, 1995, Ball–Foster Glass Container Company purchased the American National Can Company's Glass Division. At this time, Hill was considered to be an employee on an unpaid leave of absence. When Ball–Foster decided to keep Hill on leave of absence status, the Union renewed the grievance on December 20, 1995. Hill then filed another charge of discrimination with the EEOC on March 4, 1996 and, after receiving his right to sue letter, filed suit in state court on September 6, 1995.

Defendants removed the action to this district court pursuant to 28 U.S.C. §§ 1441 and 1446(a) on October 17, 1995. Defendants now move the Court to dismiss the action for lack of subject matter jurisdiction due to plaintiff's failure to fully exhaust his remedies pursuant to the CBA. FED.R.CIV.P. 12(b)(1).

## II. LEGAL STANDARD

To decide whether to grant a motion to dismiss for want of subject matter jurisdiction, a court must review the complaint "broadly and liberally, although argumentative inferences favorable to the pleader will not be drawn." *Gaubert v. United States,* 885 F.2d 1284, 1285 (5th Cir.1989), *rev'd on other grounds,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). However, all uncontroverted factual allegations of the pleadings are accepted as true. *Id.*

## III. ANALYSIS

### A. Applicable Case Law

#### 1. The *Alexander* Line of Cases

The Court begins its analysis of this issue with the unanimous Supreme Court decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Alexander,* a black union member filed a grievance under a collective bargaining agreement's arbitration clause.[2] *Alexander,* 415 U.S. at 39, 94 S.Ct. at 1015. After the

---

2. The CBA in Alexander contained a nondiscrimination clause stating the "there shall be no discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry." The agreement also contained an arbitration clause which covered "differences aris(ing) between the Company and the Union as to the meaning and application of the provision of this Agreement and any trouble arising in the plant." The CBA outlined a four step grievance procedure; if the dispute remained unresolved, it was submitted to compulsory arbitration. The arbitrator's decision was "final and binding upon the Company, the Union, and any employee or employees involved." The CBA finally provided that "arbitrator shall not amend, take way, add to, or change any of the provisions of this Agreement, and the arbitrator's decision must be based solely upon an interpretation of this Agreement." *Alexander,* 415 U.S. at 39–42, n. 3, 94 S.Ct. at 1015–16, n. 3.

Union processed Alexander's racial discrimination claim through the four step in-house procedure, the claim was sent to arbitration. The arbitrator found that Alexander had been terminated for "just cause"; thereafter, Alexander filed his Title VII claim first with the EEOC and then in federal court. *Alexander*, 415 U.S. at 42, 94 S.Ct. at 1017. The Supreme Court reversed the district court's decision that since Alexander had elected to pursue his contractual remedies under the collective bargaining agreement, he was bound by the arbitral decision and thus precluded from bringing a Title VII suit in federal court. *Alexander*, 415 U.S. at 48, 94 S.Ct. at 1020.

Contrasting the difference between an employee who "seeks to vindicate his contractual right under a collective bargaining agreement" by pursuing its grievance/arbitration procedures and an employee who "asserts independent statutory rights" by filing a Title VII cause of action in federal court, the Court held that the "distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Alexander*, 415 U.S. at 50, 94 S.Ct. at 1020. Because of the complications in effectively enforcing Title VII's guarantees in the collective bargaining context, the Court held that a union cannot prospectively waive a member's Title VII rights in a collective bargaining situation. *Alexander*, 415 U.S. at 51, 94 S.Ct. at 1021.

In two subsequent cases, the Supreme Court adhered to the holding and the reasoning of *Alexander*. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 741, 101 S.Ct. 1437, 1445, 67 L.Ed.2d 641 (1981); *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 290–91, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984). In both of these cases, the Court reiterated its concerns first with the tension between a union's negotiation of working conditions in a CBA and an individual's assertion of his statutory rights and second with an arbitrator's powers and a union representative's incentives in an arbitration proceeding pursuant to a CBA. *Id.*

### 2. *Gilmer*

In 1991, the Supreme Court decided *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). · In *Gilmer*, the plaintiff had signed an agreement to arbitrate "any controversy arising out of a registered representative's employment or termination of employment" when he registered with the New York Stock Exchange; this registration was a condition of his employment with Interstate/Johnson Lane Corp. *Id.* at 23, 111 S.Ct. at 1650–51. The Court illustrated three important distinctions between the facts of *Gilmer* and those found in the *Alexander* line of cases:

> First, those cases ... involved the quite different issue whether arbitration of contract based claims precluded subsequent resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective bargaining agreement, the claimants were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, .... Finally, those cases were not decided under the FAA, which, ..., reflects a "liberal federal policy favoring arbitration agreements."

*Id.* at 35, 111 S.Ct. at 1657.

Finding that the concerns present in arbitrating Title VII allegations in the collective bargaining arena nonexistent in the situation in which an employee has independently elected to waive his right to a judicial forum, the *Gilmer* Court enforced the arbitration clause. The Court held that an employee could waive his right to a judicial forum by agreeing to arbitrate his federal statutory claims. *Id.* at 26, 111 S.Ct. at 1652.

### 3. Post *Gilmer* Circuit and District Court Decisions

In circumstances similar to those in *Gilmer*, the Fifth Circuit has compelled arbitra-

tion of an employee's Title VII allegations. *Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir.1996); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656 (5th Cir.1995); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991). In *Alford,* the plaintiff had signed a registration agreement with the New York Stock Exchange and the National Association of Securities Dealers, Inc. pursuant to his employer's requirements. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1162 (5th Cir.1992). Finding *Gilmer* squarely on point, the court reversed the district court's refusal to compel arbitration. *Alford,* 939 F.2d at 229–30. The Fifth Circuit reached the same result in two subsequent cases involving employees who had signed individual agreements to arbitrate all employment disputes. *Rojas,* 87 F.3d at 749; *Williams,* 56 F.3d at 659.[3]

The Fifth Circuit has not addressed the applicability of *Gilmer's* exhaustion requirement in the context of a CBA's arbitration provision. However, other circuit and district courts, noting the distinctions between *Gilmer* and *Alexander,* have refused to require an employee to arbitrate his statutory claims under a Union's CBA. In *Tran,* for example, the Second Circuit refused to require exhaustion of an arbitration provision in a collective bargaining agreement of an employee's Fair Labor Standards Act claims. *Tran v. Tran,* 54 F.3d 115, 118 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996). Several district courts have also found that in the collective bargaining setting, exhaustion is not required before an employee may prosecute his statutory claims in federal court. *See Pryner v. Tractor Supply Co., Inc.*, 927 F.Supp. 1140 (S.D.Ind.1996); *Block v. Art Iron, Inc.*, 866 F.Supp. 380 (N.D.Ind.1994); *Griffith v. Keystone Steel & Wire Co.*, 858 F.Supp. 802 (C.D.Ill.1994); *Randolph v. Cooper Industries,* 879 F.Supp. 518 (W.D.Pa.1994); *Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 147 (D.Conn.1993); *see also Gallo v. Board of Regents of the Univ. of Calif.,* 916 F.Supp. 1005 (S.D.Cal.1995); *Riley v. Weyer-*

*haeuser Paper Co.,* 898 F.Supp. 324 (W.D.N.C.1995) (both holding that the court retained subject matter jurisdiction despite employee's failure to exhaust procedures under a CBA).

In support of their argument that contractual exhaustion is required, Defendants rely primarily on the recent Fourth Circuit case, *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996). The *Austin* court, faced with facts similar to those in the instant case, held that an employee could be compelled to arbitrate his Title VII and ADA claims pursuant to an arbitration clause in a collective bargaining agreement. Citing six cases which compelled arbitration, the court noted that "the only difference between these six cases and this case is that this case arises in the context of a collective bargaining agreement." *Austin,* 78 F.3d at 885, (*citing Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992)); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932 (9th Cir.1992); *Benefits Communication Corp. v. Klieforth,* 642 A.2d 1299 (D.C.App. 1994); *Fletcher v. Kidder, Peabody & Co.,* 81 N.Y.2d 623, 601 N.Y.S.2d 686, 619 N.E.2d 998 (N.Y.1993), *cert. denied,* 510 U.S. 993, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993).

From its reading of the Supreme Court precedent, this Court agrees with the *Austin* dissent that "the only difference makes all the difference." *Austin,* at 886. *Gilmer* made clear that *Alexander* was still good law; the Court took great pains to exemplify the distinctions between a union's agreement to arbitrate in the context of a CBA and an individual's decision to submit his claims to arbitration in an employment application or contract. Utilizing the three *Gilmer* distinctions, the Court will now turn to its analysis of whether exhaustion is required in the case at hand under the ADA and the applicable case law.

---

**3.** Defendants cite *Kinnebrew v. Gulf Ins. Co.,* 1994 WL 803508 (N.D.Tex.1994) (Buchmeyer, J.) in support of their contention that exhaustion is required. However, *Kinnebrew,* like *Alford,*

*Williams,* and *Rojas,* does not involve a collective bargaining agreement and thus is inapplicable to the case at hand.

## B. The Gilmer Distinctions

### 1. The Contract Language

■ The first *Gilmer* distinction concerns the language of the contract and circumstances of the agreement's execution. The CBA at issue in *Alexander* contained language which restricted the power of the arbitrator to merely interpreting the terms of the contract. *Alexander*, 415 U.S. at 39–42 n. 3, 94 S.Ct. at 1015–16 n. 3. This restriction is not present in the instant case as the CBA incorporates the "applicable provisions of the Americans with Disabilities Act." Supplemental Docs. in Supp. of Defs.' Joint Mot. to Dismiss, Ex. 1, art. 33, § 3. Furthermore, the CBA uses language such as "all grievances" and "all disputes". *Id.* at Ex. 1, art. 26, § 1, art. 27, § 1. The Fifth Circuit has recently held such language sufficiently broad to encompass Title VII claims. *Rojas*, 87 F.3d at 749.

Presumably, an arbitrator would have the power under this CBA to consider Hills' ADA claims and decide the dispute according to federal law. Thus, *Alexander's* concern that the arbitrator was without the authority to "invoke public laws" and to decide an employee's statutory claims is arguably not an issue.[4] If this case turned only upon the terms of the collective bargaining agreement and the scope of the arbitration clause, the undersigned might be inclined to find that Hill was required to exhaust his remedies under the CBA. However, precedent, the intent of Congress in creating the ADA, and other policy considerations dictate that a simple contract analysis is not dispositive of this issue. *Alexander*, the ADA, and the circumstances of Hill's case compel the Court to conclude that no exhaustion of the CBA's procedures is required.

### 2. Employee Waiver v. Union Negotiation

The first *Gilmer* distinction addressed not only the language of the agreement's arbitration clause but also the circumstances of the contract's execution. *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652.[5] *Alexander* dealt with the situation in which a union had bargained away an individual's right to a judicial forum while *Gilmer* concerned an individual's contractual choice of forum. This is a simple, but critical distinction, which the *Austin* court ignored.

*Austin* held that a union may bargain on behalf of its members the right to arbitrate. *Austin*, 78 F.3d at 885, (citing *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)). *Austin's* reliance on *Lincoln Mills* is misplaced. In *Lincoln Mills*, the union sought to compel arbitration of its members' work loads and work assignments under a collective bargaining agreement. *Lincoln Mills*, 353 U.S. at 449, 77 S.Ct. at 914. In this context, the Supreme Court held that the company must submit to arbitration pursuant to its agreement with the union. *Id.* at 455, 77 S.Ct. at 917.

■ While a union may negotiate its members' collective rights, such as working requirements and the right to strike, it is not free to override the individual rights conferred by Congress. *Alexander*, 415 U.S. at

---

**4.** The Court assumes without deciding that the CBA's incorporation of the ADA provisions would empower an arbitrator to decide claims asserted under the statute. However, it is not clear that this is necessarily the case. For instance, the ADA section is separate from the arbitration and grievance procedure. *See Block v. Art Iron, Inc.*, 866 F.Supp. at 386. Furthermore, the ADA clause in seems to impose a different procedure on the employee than does the grievance and arbitration section. *See* Supp. Docs., Ex. 1, art. 33 § 3 ("Before taking any action relative to this Section, the Company will meet with the Local Union and both parties will have sufficient opportunity to express their opinions regarding an anticipated action."). The arbitration clause additionally provides that, "The decision of the arbitrator shall be final and bind-

ing on the Company and the Union." *Id.* at Ex. 1, art. 27, § 2. Since the arbitral decision is not binding on the employee, exhaustion of the remedy would be futile. Last, since the contract expressly adopts the provision of the ADA, and the ADA does not require the exhaustion of contractual remedies, arguably no such procedure is required. However, the Court will assume that the arbitrator would have the power under the CBA to decide Hill's ADA allegations.

**5.** The Court in its first distinction emphasized that the *employees* [in the Alexander line of cases] had not agreed to arbitrate their statutory claims. *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657. (emphasis added).

50, 94 S.Ct. at 1021. Tide VII rights, by their very nature, "can form no part of the collective bargaining process" and thus cannot be prospectively waived by a union. *Alexander*, 415 U.S. at 50, 94 S.Ct. at 1021; *Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1657. Since the ADA establishes similar rights to those in Title VII, under the same reasoning, a union cannot prospectively waive its members' ADA rights. *See Munoz v. H & M Wholesale, Inc.*, 926 F.Supp. 596 (S.D.Tex. 1996).

■ Other courts have recognized the inherent difference between a collective bargaining agreement and an individual employment contract. *Pryner v. Tractor Supply Co., Inc.*, 927 F.Supp. 1140, 1146 (S.D.Ind. 1996); *see also Claps v. Moliterno Stone Sales, Inc.*, 819 F.Supp. 141, 147 (D.Conn. 1993). As noted by both *Alexander* and *Pryner*, "A collective bargaining agreement by its very nature, may only address the contractual rights of the members of the bargaining unit." *Pryner*, 927 F.Supp. at 1146.

The CBA at issue in this case illustrates the composite nature of the collective bargaining agreement.

> The intent and purpose of this Union Shop Contract is to maintain and further harmonious labor-management relations upon a constructive and sound foundation. This foundation has, as its cornerstone, full acceptance and recognition of the obligation and rights of both parties. This foundation embraces a true spirit of full cooperation, with both parties working together so full and prosperous employment can continue and from which will emanate a healthy and prosperous industry. Supp. Docs. in Support of Def.s' Joint Mot. to Dismiss, Ex. 1, Preamble.

Since "the parties" are the Union and the Company, this preamble illuminates that the agreement is between the Union, acting on behalf of laborers as a whole, and the corporation; it is the "rights and obligations" of the organization, as opposed to the individual, which are addressed. Additionally, the arbitration clause dictates that: "The decision of the arbitrator shall be final and binding on the Company and the Union." Supp. Docs. in Support of Def.s' Joint Mot. to Dismiss, Ex. 1, art. 27, § 2. The language of the contract indicates that the grievance procedures were intended to process the complaints of the Union, not of an independent employee; it was intended to bind the Union and not the individual.

*Gilmer* recognized that a person's agreement to arbitrate his Title VII claims does not waive substantive rights but rather selects the forum for their resolution. *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. However, the ADA provides a judicial forum for the resolution of disability discrimination allegations. 42 U.S.C. § 12117. *Alexander's* preclusion of a union's prospective waiver of individual rights includes the right to a judicial forum.

Moreover, the legislative history of the ADA demonstrates that Congress did not intend for the rights conferred by its statute to be waived by a union in the collective bargaining process. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652 **(holding that the burden of proving that Congress intended to preclude waiver of a judicial forum is on the plaintiff).** While Section 12212 of the ADA encourages the utilization of arbitration, the legislative history of the statute reveals that Congress intended to encourage only *voluntary* agreements to arbitrate.[6] The House reports illustrate what the drafters meant by "voluntary":

> It is the intent of the conferees that the use of these alternative dispute resolution procedures is completely voluntary. Under no condition would an arbitration clause in a collective bargaining agreement or employment contract prevent an individual from pursuing their rights under the ADA.

H.R.Conf.Rep.No. 596, 101st Cong., 2d Sess. 89 (1990), reprinted in 1990 U.S.C.C.A.N. pp. 267, 565, 598. Moreover, even voluntary

---

6. Section 12212 of the ADA provides, "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under this Chapter." 42 U.S.C. § 12212.

agreements to arbitrate were not intended to interfere with an individual's right to sue in federal court under the ADA.

This amendment was adopted to encourage alternative mean of dispute resolution that are already authorized by law. The Committee wishes to emphasize, however, that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by this Act. Thus, for example, the Committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of this Act. This view is consistent with the Supreme Court's interpretation of title VII of the Civil Rights Act of 1964, whose remedial provisions are incorporated by reference in title I. The Committee believes that the approach articulated by the Supreme Court in *Alexander v. Gardner–Denver* applies equally to the ADA and does not intend that the inclusion of Section 513 be used to preclude rights and remedies that would otherwise be available to persons with disabilities. H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 3, at 76–77 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 499–500.

The history of the statute's enactment clarifies the law established in *Alexander* specifically with respect to the ADA. Clearly, Congress intended citizens to have a clear path to the rights and remedies created by the ADA. Although a union's contract with a company can extend its member rights, it may not supersede them.

After *Alexander's* pronouncement that a union could not waive its member's Title VII rights, it noted that the "actual submission of the petitioner's grievance to the arbitral forum did not alter the situation." *Alexander,* 415 U.S. at 52, 94 S.Ct. at 1021. Implicitly, the failure of the worker to pursue a CBA's grievance procedure would change neither the concerns nor the holding of the case. Thus, the necessary extension of *Alexander* is that an employee may exercise his rights in either or both forums.

Certain aspects of Hill's case demonstrate that only by finding that no contractual exhaustion is required, can the Court respect Congress' grant of rights under and its intent behind the ADA. The Court first notes that the merits of Hill's ADA claim were never addressed in the grievance procedure. The Company denied Hill's complaint based upon his failure to file the grievance within the CBA's three day deadline. **See Supplemental Docs. in Supp. of Def.s' Joint Mot. to Dismiss, Ex. 14; Ex. 1, art. 26, § 1, Step 1.** The focus of the grievance process has not been upon the Company's purported disability discrimination, but upon the enforcement of a three day limitation period.

Moreover, the merits of Hill's allegations may never be addressed by the Company or by an arbitrator. By the terms of the CBA, Hill was required to pursue his claims to the third and fourth steps of the grievance procedure within fifteen and seven days, respectively. *Id.* at art. 26, §§ 3, 4. The dispute must then be submitted to an arbitrator within ten days. *Id.* It is clear that Hill has failed to file his claim within the time limits established by the CBA. After Hill exhausted the grievance and arbitration provisions, the final decision would not preclude Hill from then seeking redress in federal court. *Alexander,* 415 U.S. at 59–60, 94 S.Ct. at 1025; *see also* See Supplemental Docs. in Supp. of Def.s' Joint Mot. to Dismiss, Ex. 14; Ex. 1, art. 27, § 2. In fact, the arbitral decision would be admissible as evidence but nothing more. *Alexander,* 415 U.S. at 59–60, 94 S.Ct. at 1025. Thus, to require Hill to exhaust the CBA's procedures would be futile.

### 3. Individual Statutory Rights v. Collective Representation

*Austin* also reads *Gilmer* as a retreat from *Alexander's* mistrust of arbitral resolution of statutory claims. *Austin,* 78 F.3d at 882; *see also Gilmer,* 500 U.S. at 34 n. 5, 111 S.Ct. at 1656 n. 5, (*citing Shearson/Am. Express Inc. v. McMahon,* 482 U.S. 220, 231–32, 107 S.Ct. 2332, 2340–41, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626–27, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

However, *Gilmer's* second distinction addressed the Court's continuing concern that "in collective bargaining arbitration 'the interests of the individual may be subordinated to the collective interests of all employees in the bargaining unit.'" *Gilmer*, 500 U.S. at 34, 111 S.Ct. at 1656 (*quoting Alexander*, 415 U.S. at 58 n. 19, 94 S.Ct. at 1024 n. 19). This conflict was directly addressed in the *Alexander* opinion: "the harmony of interest between the union and the individual employee cannot always be presumed." *Alexander*, 415 U.S. at 58 n. 19, 94 S.Ct. at 1024 n. 19. Thus, it was not fear of arbitration in general but fear of arbitration in the context of a CBA with a union representative that influenced the Court's decisions.

The CBA in the instant case exemplifies this consideration. Although the first two steps in the grievance procedure address the employee's prosecution of his complaint, the remaining procedures allow for only the Union representative's inclusion in the discussion and settlement of the charge. *See* Supplemental Docs. in Supp. of Def.s' Joint Mot. to Dismiss, Ex. 1, art. 26, § 1, Steps 3, 4. It is the Union delegate who receives the decision of the Company, not the employee. *Id.* at Step 3. And only the Union may refer the grievance to arbitration. *Id.* at Step 4, art. 27, § 1. Clearly, from the terms of the CBA, the employee's role in the process is minimal. After notifying his union representative of his allegations, he is completely at the mercy of the Union to argue his case and to proceed to the next step.

When the collective rights of workers are at stake, an internal grievance proceeding with an arbitral appeal led by the Union may prove perfectly sufficient. When an individual can represent himself or choose his own agent in an arbitration to which he submitted, the alternative forum may be both efficient and fair. It is when the individual needs and rights of a disabled worker, who is requesting treatment different from the rest, that it is inappropriate to require an employee to submit to the will of his union and its agreement with the company.

**4. The Applicability of FAA**

The third *Gilmer* distinction regards the applicability of the FAA; the Court noted that *Alexander* line of cases did not fall under the provisions of the FAA, while *Gilmer* did. The FAA provides that

> a written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be enforceable, save upon such grounds as exist at law or equity for the revocation of any contract. 9 U.S.C. § 2.

The FAA excludes from its mandates, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Although the Supreme Court left open the question of the scope of the § 1 exclusion, the Fifth Circuit has recently adopted a narrow interpretation the exclusion phrase "any other class of workers involved in interstate commerce." *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 747–48 (5th Cir.1996), (*citing* 9 U.S.C. § 1). Thus, in our circuit, the FAA's exclusionary clause applies only to the employment contracts of workers who are "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Id.*

Assuming that the FAA applies, this does not change the Court's decision that exhaustion under the CBA is not required prior to filing suit. While the FAA's policy favoring arbitration and the contract language incorporating the ADA alleviates two of *Alexander* and *Gilmer's* concerns in Hill's case, the fact remains that Hill did not agree to submit his personal rights to arbitration. *See Pryner*, 927 F.Supp. at 1146 (refusing to require the employee to exhaust his arbitration remedy despite the fact the ADA was specifically mentioned in the CBA and though the FAA might apply). The Court thus finds that the FAA does not compel Hill to arbitrate his individual statutory rights under his Union's agreement.

**IV. CONCLUSION**

As the Supreme Court has recently acknowledged, *Gilmer* is consistent with *Alexander*. *Livadas v. Bradshaw*, 512 U.S. 107, n. 21, 114 S.Ct. 2068, n. 21, 129 L.Ed.2d 93

(1994). The only logical reconciliation between these two cases is that, while an individual is free to waive his rights to a judicial forum for his Title VII claims, a union, through its negotiation on behalf of the collective good, is not. A union's focus on the composite needs of its members during the negotiation processes of a CBA is antithetical to the individual rights of a disabled worker under the ADA. Moreover, the union's representation of a member during the grievance procedure does not assure that the ADA's mandates are respected and effectively prosecuted.

With both of these concerns in mind, the *Alexander* Court opined that the federal policy of favoring arbitration of labor disputes and the federal policy against discriminatory employment practices could best be accommodated by permitting an employee to pursue *fully both* his remedy under the grievance-arbitration clause of a collective bargaining agreement and his cause of action under Title VII. *Alexander*, 415 U.S. at 60, 94 S.Ct. at 1024 (emphasis added). The intent behind the ADA's arbitration section demonstrates that arbitration was intended to provide an additional, not alternative forum.

The Court thus finds that Hill is not required to exhaust the CBA's procedures in order to challenge his employer's actions under the ADA. As *Alexander* stated, "Congress thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is duty of courts to assure the full availability of this forum." *Alexander*, 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21. It is with this directive in mind that the Court finds that Hill may pursue his contractual remedy, his statutory remedy, or both. *Austin*, 78 F.3d at 887. The district court retains subject matter jurisdiction regardless of Hills decision. For these reasons, the Court **FINDS** and **RECOMMENDS** that the **Defendants' Joint Motion to Dismiss** be **DENIED.**

Signed this 11th day of Sept., 1996.