United States Court of Appeals,

Fifth Circuit.

No. 95-50882.

Summary Calendar.

Camille ROJAS, Plaintiff-Appellant,

v.

TK COMMUNICATIONS, INC., d/b/a KXTN Radio Station and Tichenor Media Systems, Inc., d/b/a KXTN Radio Station, Defendants-Appellees.

July 11, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before WIENER, EMILIO M. GARZA and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

### FACTS

In 1991, Camille Rojas was employed as a disc jockey by TK Communications Inc. ("TK"), which operated KXTN radio station in San Antonio, Texas. During her tenure at the station, Rojas alleges that she was sexually harassed by her supervisor, Jesse Arce. Despite her complaints, Rojas alleges that TK never took corrective action and that Arce and another supervisor retaliated against her because of her complaints. Rojas resigned from employment with KXTN on December 22, 1991.

While working at the radio station, Rojas executed an employment agreement with her employer. Paragraph 23 of that agreement provides, in pertinent part, as follows:

**23. Arbitration** Except for breaches or threatened breaches of the provisions of Paragraphs 15 through 18 relating to equitable relief, any action contesting the validity of this

> Agreement, the enforcement of its financial terms, or other disputes shall be submitted to arbitration pursuant to the American Arbitration Association in Ft. Lauderdale, Florida....

Despite this arbitration clause, Rojas commenced this lawsuit against TK and Tichenor Media Systems, Inc., ("Tichenor").[1]

PROCEEDINGS BELOW

In her original petition, Rojas alleged that she was subjected to sexual harassment and retaliation by TK for having complained of the alleged sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Rojas joined Tichenor as a defendant under a theory of successorship liability. TK and Tichenor filed their answers, denying Rojas' allegations.

TK then sought to dismiss the action on the ground that Rojas' claims were subject to the mandatory arbitration clause in her employment agreement. Tichenor filed a motion for summary judgment claiming that it had no successor liability in connection with Rojas' underlying claim.

On October 30, 1995, the district court granted TK's motion to dismiss and Tichenor's motion for summary judgment. The court first ruled that Rojas must arbitrate her claims against TK in accordance with the arbitration clause in her employment agreement. The court further held that, as a matter of law, Tichenor had no liability to Rojas as a successor to TK. This appeal followed.

DISCUSSION

---

[1]Tichenor purchased KXTN from TK in June of 1993.

2

## I. Standard of Review

The district court's dismissal of Rojas' claims and grant of summary judgment are subject to de novo review. *Burns-Toole v. Byrne,* 11 F.3d 1270 (5th Cir.1994) (internal citation omitted). A district court's grant of summary judgment is proper when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence presented to the trial court is viewed in a light most favorable to the nonmovant. *Hassan v. Lubbock Indep. Sch. Dist.,* 55 F.3d 1075, 1078 (5th Cir.1995).

## II. Arbitration

The district court concluded that Rojas' Title VII claims were subject to compulsory arbitration. Rojas challenges this conclusion on several grounds. First, she claims that Title VII claims fall within the Federal Arbitration Act's ("FAA") "contracts of employment" exclusion. Therefore, she contends she is not required to arbitrate her claims. In the alternative, she argues that even if her claims are not within the FAA's exclusion, the contract in question contains a narrow arbitration clause which is inapplicable to her claims. Finally, she contends that the employment agreement in question is an unconscionable contract of adhesion and is therefore unenforceable. We address each of these arguments below.

## A. Arbitrability of Title VII Claims

Under the FAA, "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. None of the parties disputes that Rojas' contract with TK for employment as a disc jockey is one "involving commerce" within the meaning of § 2 of the FAA. However, Rojas contends that her employment contract is excluded from the FAA's coverage.

Section 1 of the FAA provides, in pertinent part: "but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 *et seq.* Arguing for a broad reading of this section, Rojas contends that because she is a worker engaged in interstate commerce, the FAA does not apply to her contract of employment. We disagree.

In 1991, the Supreme Court held that an employee, who agreed to arbitrate claims arising out of his employment, was required to arbitrate a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* and therefore was barred from a federal court lawsuit. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Following *Gilmer* this court held that Title VII claims must likewise be arbitrated. In *Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229 (5th Cir.1991), an employee sued under Title VII for discriminatory discharge. Although the employee was subject to an arbitration agreement, the district court refused to dismiss the case or to

4

compel arbitration. This court affirmed. However, the Supreme Court subsequently vacated our affirmance and remanded for further consideration in light of *Gilmer, supra.* Relying on *Gilmer,* we held that the employee's Title VII claim must be arbitrated:

> Because both the ADEA and Title VII are similar civil rights statutes, and both are enforced by the EEOC ... we have little trouble concluding that Title VII claims can be subjected to compulsory arbitration. Any broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer.*

939 F.2d at 230. While the preceding statement would appear to dispose of the issue presently before the court, we must address a distinction between the facts of the instant case and those present in both *Gilmer* and *Alford.*

> In *Gilmer* the Supreme Court noted:

> [I]t would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained in a contract of employment. The FAA requires that the arbitration clause being enforced be in writing. See 9 U.S.C. §§ 2, 3. The record before us does not show, and the parties do not contend, that Gilmer's employment agreement with [his employer] contained a written arbitration clause. Rather, the arbitration clause at issue in Gilmer's securities registration application, which is a contract with the securities exchanges, not with [his employer].... Consequently, we leave for another day the issue [of whether § 1 excludes from the FAA all "contracts of employment"].

*Gilmer,* 500 U.S. at 24 n. 1, 111 S.Ct. at 1651 n. 1.

> Similarly, in *Alford,* a case that also dealt with an arbitration clause contained in a contract between an employee and a securities exchange rather than an employer, we noted that the Supreme Court had expressly refused to address the issue now before the court. *See Alford,* 939 F.2d at 230 n. * (noting that courts should be mindful of the potential issue presented by the exclusionary language present in § 1 of the FAA when dealing with

5

arbitration clauses contained in employment contracts between employers and employees).  Consequently, we must determine the scope of the exclusionary language present in § 1.

We are not the first to address the scope of the exclusions present in § 1.  In fact, numerous other courts have addressed this very issue, the majority of which have determined that the exclusionary language present in § 1 is to be narrowly construed.[2]  Particularly persuasive is a recent opinion from the Sixth Circuit.

In *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592 (6th Cir.1995), the court, after a thorough analysis of the treatment of this issue by its sister circuits, came to the following conclusion:

> [T]he exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are. We believe this interpretation comports with the actual language of the statute and the apparent intent of the Congress which enacted it.  The meaning of the phrase "workers engaged in foreign or interstate commerce" is illustrated by the context in which it is used, particularly the two specific examples given, seamen and railroad employees, those being two classes of employees engaged in the movement of goods in commerce.

---

[2]*See Miller Brewing Co. v. Brewery Workers Local Union No. 9,* 739 F.2d 1159, 1162 (7th Cir.1984) (§ 1 exclusion is limited to workers employed in the transportation industries or engaged in the actual movement of goods in interstate commerce), *cert. denied* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1069 (2d Cir.1972) (same);  *Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971) (same);  *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers,* 207 F.2d 450, 453 (3d Cir.1953) (same);  *But see Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 310-11 (6th Cir.1991) (*dicta*);  *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1119-20 (3d Cir.1993).

6

*Asplundh,* 71 F.3d at 601.

If Congress had intended to exclude all contracts of employment from FAA coverage, Congress could simply have used statutory language in § 1 similar to the following: "... but nothing herein contained shall apply to any contracts of employment." Congress did not do this. As another court has noted, "[i]t is quite impossible to apply a broad meaning to the term "commerce' in Section 1 and not rob the rest of the exclusion clause of all significance." *Albert v. National Cash Register Co.,* 874 F.Supp. 1324, 1327 (S.D.Fla.1994). We agree with the majority of other courts which have addressed this issue and conclude that § 1 is to be given a narrow reading. Therefore, we find that the district court was correct when it determined that Rojas' employment contract was subject to the requirements of the FAA.

B. Applicability of the Arbitration Clause in Question

Next, Rojas argues that even if her claim is not excluded from the FAA's coverage, her claim is not within the "narrow language" of the arbitration clause in her contract. The clause at issue covers "any action contesting the validity of this Agreement, the enforcement of its financial terms, or *any other disputes.*" (emphasis added).

> Whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration.... "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability."

*City of Meridian, Miss. v. Algernon Blair, Inc.,* 721 F.2d 525, 527-

7

28 (5th Cir.1983) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-250, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983)). Contrary to Rojas' attempt to characterize the arbitration clause as "narrow", we conclude that the district court was correct when it found that "any other disputes" was sufficiently broad to encompass Rojas' Title VII claims. *See also Crawford v. West Jersey Health Sys.,* 847 F.Supp. 1232, 1243 (D.N.J.1994) (Title VII claim encompassed by arbitration clause requiring arbitration of " "any dispute ... regard[ing] the interpretation or performance of any part of this Agreement' "); *DiCrisci v. Lyndon Guar. Bank,* 807 F.Supp. 947, 950-51 (W.D.N.Y.1992) (Title VII claims encompassed by arbitration clause requiring arbitration of "any dispute").

C. Unconscionability of Agreement

Rojas' claim that the employment agreement is an unconscionable contract of adhesion is an attack on the formation of the contract generally, not an attack on the arbitration clause itself.[3] Because her claim relates to the entire agreement, rather than just the arbitration clause, the FAA requires that her claims be heard by an arbitrator. *See R.M. Perez & Assoc., Inc. v. Welch,*

---

[3]In her brief, Rojas contends that her attack on the Agreement is limited to the arbitration clause. While we acknowledge that she specifically attacks the arbitration clause, she also contends that she signed the Agreement "[b]ased upon the Defendant's representations ... [that the Agreement's] coverage [would] be limited to situations such as non-competition, payola, and intellectual property rights." Appellant's Brief at 18. She also attacks the agreement based upon "inequality of bargaining power". *Id.* These assertions belie Rojas' contention that her attack is limited to the arbitration clause and they support our conclusion that her attack is directed at the entire agreement.

960 F.2d 534, 538 (5th Cir.1992).

III. Successor Liability[4]

Under general contract principles, there is no dispute that Tichenor did not assume liability on Rojas' claim. Rojas does not dispute that, in its asset purchase agreement with TK, Tichenor expressly excepted Rojas' claim against TK when it assumed certain pre-transfer obligations of TK.

The liability that Rojas seeks to establish against Tichenor, however, does not arise from contract. The successorship doctrine is derived from labor law principles enunciated in four Supreme Court cases: *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), *NLRB v. Burns International Security Servs., Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), *Howard Johnson Co. v. Detroit Local Joint Executive Bd.,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974), and *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987). *See Southward v. South Cent. Ready Mix Supply Corp.,* 7 F.3d 487, 493 (6th Cir.1993).

*Wiley* held that a successor employer will have a duty to arbitrate under a preexisting collective bargaining agreement when there is "substantial continuity" in the business enterprise before and after a change in ownership. 376 U.S. at 551, 84 S.Ct. at 915. In *Burns,* the Court ruled that, even though a successor employer

---

[4]Finding that we are in agreement with the district court on this issue, we have adopted, and will simply restate the relevant portions of the district court's analysis of Tichenor's successor liability.

may be required to recognize and bargain with a union under the reasoning in *Wiley,* it is not bound to the substantive terms of a preexisting collective bargaining agreement.  406 U.S. at 277-90, 92 S.Ct. at 1576-84.  In *Howard Johnson,* the Court further limited *Wiley* by holding that a successor employer by way of sale of assets, as opposed to a merger transaction as in *Wiley,* was not bound to arbitrate a grievance.  417 U.S. at 257-59, 94 S.Ct. at 2240-42.  Finally, in *Fall River Dyeing,* the Court reaffirmed *Burns* holding that a new employer was free to disregard the terms of its predecessor's collective bargaining agreement in hiring the predecessor's employees and that it had no duty to arbitrate unless there was substantial continuity between the former and latter's business operations.  482 U.S. at 40, 43-47, 107 S.Ct. at 2234, 2236-38.  *See generally, Southward,* 7 F.3d at 493-96.

Although developed in the context of labor relations, the doctrine of successor liability has been extended to claims asserted under Title VII and related statutes.  As one court explained,

> the successor doctrine arises in the context of discrimination cases in situations where the assets of a defendant employer are transferred to another entity.  Thus, the purpose of the doctrine is to ensure that an employee's statutory rights are not "vitiated by the mere fact of a sudden change in the employer's business."  The doctrine allows the aggrieved employee to enforce against the successor a claim he could have secure against the predecessor.
>
> Thus, applicability of the doctrine hinges on the need to protect a plaintiff where the offending entity is substituted by another company.

*Brennan v. Nat'l Tel. Directory Corp.,* 881 F.Supp. 986, 992 (E.D.Pa.1995) (citations omitted).

10

In *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1094 (6th Cir.1974), the court identified nine factors to be considered in determining whether successor liability should be imposed in a discrimination case.  These factors are:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor;  (2) the ability of the predecessor to provide relief;  (3) whether there has been a substantial continuity of business operations;  (4) whether the new employer uses the same plant;  (5) whether he uses the same or substantially the same work force;  (6) whether he uses the same or substantially the same supervisory personnel;  (7) whether the same jobs exist under substantially the same working conditions;  (8) whether he uses the same machinery, equipment, and methods of production;  and (9) whether he produces the same product.

*Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 750 (7th Cir.1985) (paraphrasing *MacMillan* ).  This court agrees with *Musikiwamba* that the first two factors are critical.  *Id.*  The remaining seven simply "provide a foundation for analyzing the larger question of whether there is a continuity in operations and the work force of the successor and predecessor employers," as required by *Wiley* and its progeny.  *Id.* at 751;  *see also Bates v. Pacific Maritime Ass'n,* 744 F.2d 705, 709-10 (9th Cir.1984) (three factors governing successor liability determination are (1) continuity in operations and workforce, (2) notice of the claim, and (3) ability of predecessor employer to provide relief);  *Preyer v. Gulf Tank & Fabricating Co.,* 826 F.Supp. 1389, 1395 (N.D.Fla.1993);  *cf. Criswell v. Delta Air Lines, Inc.,* 868 F.2d 1093, 1095 (9th Cir.) (applying *Bates* factors in age discrimination case), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989).

The policy underlying the successor doctrine—to protect an

11

employee when the ownership of his employer suddenly changes—is not served by imposing liability on Tichenor in this case. Although Tichenor had notice of Rojas' claim and continued to operate KXTN in much the same way as TK, TK is still a viable entity. Tichenor submitted uncontroverted evidence on summary judgment that, although TK has sold the assets of KXTN, it still operates five other radio stations, including one in Dallas. Moreover, Rojas does not seek reinstatement in this action and has, in fact, rejected Tichenor's offer for reemployment at KXTN under conditions designed to prevent further harassment. Under these circumstances, it would be unjust to impose liability on Tichenor for the mere purpose of enhancing Rojas' ability to collect a money judgment. *See Musikiwamba,* 760 F.2d at 750-751; *Brennan,* 881 F.Supp. at 992; *Brown v. Evening News Ass'n,* 473 F.Supp. 1242 (E.D.Mich.1979). *Compare Bates,* 744 F.2d at 710 (fact that predecessor still a viable entity less relevant where plaintiffs sought classwide relief rather than only monetary and injunctive relief as individuals). Accordingly, we find that the district court did not err when it granted Tichenor's motion for summary judgment on the issue of successor liability.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.