P. Stephen SATARINO, Plaintiff,

v.

A.G. EDWARDS & SONS, INC., Defendant.

Civil Action No. 3:96–CV–1587–D.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 23, 1996.

court was merely reciting matters as the pleadings indicated.

**610**

Robert E. Goodman, Jr., Dallas, TX, for plaintiff.

Rodney Acker and Veretta L. Anderson of Jenkens & Gilchrist, Dallas, TX, for defendant.

FITZWATER, District Judge:

This case presents the question whether plaintiff's claims for relief pursuant to the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654, are subject to compulsory arbitration by reason of clauses in a Supplementary Training Agreement For an Investment Broker ("Training Agreement"), Investment Broker Agreement ("Broker Agreement"), and National Association of Securities Dealers, Inc. ("NASD") Form U–4 ("Form U–4"), that plaintiff and defendant entered into in conjunction with plaintiff's employment. Concluding that the claims must be arbitrated, the court grants defendant's motion to dismiss.

**I**

Plaintiff P. Stephen Satarino ("Satarino") sues defendant A.G. Edwards & Sons, Inc. ("Edwards"), alleging that Edwards violated the ADA and the FMLA. Satarino asserts that Edwards employed him as a trainee broker, and later terminated his employment following his involvement in an automobile accident. Satarino maintains that he suf-

fered serious injuries in the accident, which compromised his ability to process information, and to work productively and for long hours, as he had done prior to the accident. He alleges that Edwards failed reasonably to accommodate his injury by discouraging him from attending necessary medical treatment and physical therapy appointments. Satarino avers that Edwards classified or segregated him in a way that adversely affected his status and employment opportunities, denied him reasonable accommodation with respect to his physical limitations, and terminated him on the basis of his disability. He also contends that Edwards discriminated and retaliated against him for opposing discriminatory practices.

In support of his FMLA claim, Satarino alleges that Edwards interfered with his right to take leave for medical care and physical therapy, retaliated against him for exercising his FMLA rights, failed to post the notices required by the FMLA or to modify the employee handbook as required by the Act, and discriminated and retaliated against him for opposing discriminatory practices under the FMLA.

Edwards moves the court to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1), or to stay the case and compel arbitration. Edwards argues that Satarino's action must be dismissed or stayed because the parties agreed to binding and enforceable arbitration of these claims in the Training Agreement, Broker Agreement, and Form U–4. Satarino opposes the motion on the grounds that the agreements lack specific references to arbitration of discrimination claims, generally, and to arbitration of ADA and FMLA claims, specifically. In a supplemental rejoinder, Satarino urges that the adhesive nature of these agreements should preclude their enforcement.[1]

The Training Agreement states:

---

1. Edwards filed its reply brief in support of its motion on October 10, 1996. On October 18, 1996 Satarino filed a motion for leave to file a rejoinder. The court has today granted the motion, and has considered Satarino's rejoinder in deciding this motion. Normally, under the practice and reasoning of the court adopted in

*Springs Indus., Inc. v. American Motorists Ins. Co.,* 137 F.R.D. 238, 239–40 (N.D.Tex.1991) (Fitzwater, J.), the court would permit Edwards to file a final reply brief before ruling on its motion. Because the court is deciding the motion in Edwards' favor, there is no need to do so.

ANY CONTROVERSY OR DISPUTE ARISING BETWEEN [SATARINO] AND EDWARDS IN RESPECT TO THIS AGREEMENT OR [HIS] EMPLOYMENT BY EDWARDS SHALL BE SUBMITTED FOR ARBITRATION BEFORE THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

Training Agreement at [3].

The Broker Agreement contains a section entitled "Arbitration," which provides:

> [Satarino] agree[s] that any controversy or dispute arising between [Satarino] and Edwards in respect to this agreement or [his] employment by Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.

Broker Agreement at ¶ 26.

In the Form U–4, Satarino agreed as follows:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement [sic] in any court of competent jurisdiction.

Form U–4 at 4, ¶ 5. Satarino registered with both the NASD and the New York Stock Exchange, Inc. ("NYSE"). NYSE Rule 347 mandates arbitration of "[a]ny controversy between a registered representative and any member organization arising out of the employment or termination of employment of such registered representative." *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23, 111 S.Ct. 1647, 1650–51, 114 L.Ed.2d 26 (1991) (quoting NYSE Rule 347).

## II

### A

It is well-settled that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, evinces a liberal policy favoring arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Doubts concerning the applicability of an arbitration clause should be resolved in favor of arbitration. *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). "[S]tatutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. By "agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

In *Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir.1996), the Fifth Circuit held that a discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, was subject to compulsory arbitration. *Id.* at 748. The employee-plaintiff signed an employment agreement that provided, with exceptions not pertinent here, that "any action contesting the validity of this Agreement, the enforcement of its financial terms, or other disputes shall be submitted to arbitration." *Id.* at 746 (quoting arbitration clause of employment agreement). The panel held *inter alia* that the district court had correctly found that the arbitration clause's inclusion of "any other disputes" was sufficiently broad to encompass the plaintiff's Title VII claims. *Id.* at 748–49.

Applying *Rojas* to the present case, the relevant clauses in the three agreements are unquestionably of adequate breadth to support compulsory arbitration. Both the Training Agreement and the Broker Agreement provide that "any controversy or dispute arising between [Satarino] and Edwards in respect to . . . [his] employment by Edwards" shall be arbitrated. The Form U–4, enforced together with NYSE Rule 347, dictates that Satarino shall "arbitrate any dispute, claim or controversy that may arise between me and my firm" concerning "employment or termination of employment."

### B

Satarino makes no mention of *Rojas* in his briefing. He instead relies principally on *Hoffman v. Aaron Kamhi, Inc.*, 927 F.Supp. 640 (S.D.N.Y.1996), and asserts that because the arbitration clauses on which Edwards relies make no explicit reference to arbitration of discrimination claims, generally, or to ADA and FMLA actions, specifically, Edwards cannot compel him to arbitrate these claims.

Satarino correctly points out that in *Hoffman* the court held that an arbitration agreement did not encompass the plaintiff's ADA and FMLA claims. *Id.* at 644–45. But *Hoffman* can be distinguished on the basis of the "poorly worded and ambiguously phrased" arbitration provision at issue. *See id.* at 645. The clause in *Hoffman* "state[d] that 'any claim or controversy among or between the parties hereto *pertaining to the Corporations* . . . or respecting any matter. contained in this Agreement of any difference *as to the interpretation of any of the provisions of this Agreement*' is subject to binding arbitration." *Id.* (emphasis in original). The court found it significant that the clause provided only for arbitration of disputes "pertaining to the Corporations," or "respecting . . . the interpretation of any of the provisions" of the agreement, and not "for the arbitration of any and all disputes arising from the agreement." *Id.*[2]

Even if *Hoffman* had involved identical agreements to those presented in this case, however, this court is bound by decisions of the Fifth Circuit. *See, e.g., Cedillo v. Valcar Enters. & Darling Del. Co.*, 773 F.Supp. 932, 936 (N.D.Tex.1991) (Fitzwater, J.). *Rojas*, which was decided several months after *Hoffman*, holds that an employment agreement to arbitrate "any other disputes" related to the agreement is sufficient to mandate compulsory arbitration of a Title VII claim. To the extent that *Hoffman* would require a different result, *Rojas* controls.

### C

Without addressing *Rojas* specifically, Satarino attempts to distinguish ADA and FMLA claims from the cases that hold that Title VII claims, and actions brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, can be subjected to compulsory arbitration. Citing *Hoffman*'s reference to the legislative history of the ADA, *see Hoffman*, 927 F.Supp. at 644 n. 3, and *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994),[3] he argues that in contrast to Title VII and ADEA claims, actions brought under the ADA and FMLA are particularly inappropriate for arbitration. He also asserts that the ADA disfavors arbitration.

The Fifth Circuit has not addressed whether ADA or FMLA actions can be subjected to compulsory arbitration clauses. Although *Rojas* involved a Title VII claim, the panel showed no hesitancy in upholding the parties' choice to resolve the dispute in an arbitral forum. *See Rojas*, 87 F.3d at 749. This court predicts that the Fifth Circuit will follow the reasoning of courts that hold that parties who have contracted to do so can be compelled to arbitrate ADA claims, and that it will also uphold clauses that mandate arbitration of FMLA claims.

In *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.), *petition for cert. filed*, 65 U.S.L.W. 3181 (U.S. Aug. 28, 1996) (No. 96–337), the Fourth Circuit held that plaintiff's ADA and Title VII claims were subject to compulsory arbitration. *Id.* at 886. The court noted the holding in *Gilmer* that agreements to arbitrate statutory claims are enforceable. *Id.* at 880. And it followed the *Gilmer* formulation in determin-

---

**2.** The line the *Hoffman* court drew is somewhat akin to the distinction this court made in *Beckham v. William Bayley Co.*, 655 F.Supp. 288, 291 (N.D.Tex.1987) (Fitzwater, J.) (holding that action was not subject to mandatory arbitration, and distinguishing between clause that provided that parties must arbitrate disagreements as to the *intent* of the contract, and more typical arbitration provisos that require arbitration of "any controversy or claim arising out of or relating to

[the] contract or the breach thereof," or "any controversy concerning the interpretation, performance, or application of [the] contract." (footnotes omitted)).

**3.** *But see Johnson v. Hubbard Broadcasting, Inc.*, 940 F.Supp. 1447, 1454–56 (D.Minn.1996) (stating that *Lai* "has met with widespread criticism in several Circuits").

ing whether Title VII and ADA claims should be treated differently. In *Gilmer* the Supreme Court stated that if Congress intended to preclude a waiver of a judicial forum for an ADEA claim, "it will be discoverable in the text of the [Act], its legislative history, or an 'inherent conflict' between arbitration and the [Act's] underlying purposes." *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652.

With respect to the ADA, the *Austin* panel examined the text of the Act. It pointed out that 42 U.S.C. § 12212 encourages arbitration where "appropriate" and "to the extent authorized by law." *Austin*, 78 F.3d at 881. It held that "[t]he meaning of this language is plain—Congress is in favor of arbitration." *Id.* The court examined the legislative history, finding no intent to limit arbitrability of ADA claims. *Id.* at 881–82. Finally, the panel held that "there is no inherent conflict between arbitration and the underlying purposes of the [ADA] or Title VII." *Id.* at 882. The circuit court applied *Gilmer*'s reasoning and result to the plaintiff's Title VII and ADA claims: "The Court clearly has removed any doubt that age discrimination claims may be arbitrated. We are of the opinion that the same reasoning is valid for gender and disability claims." *Id.*

*McWilliams v. Logicon, Inc.*, 1996 WL 439291 (D.Kan.1996), also held that a plaintiff's ADA claim was subject to mandatory arbitration by reason of arbitration clauses in the plaintiff's employment contracts. *Id.* at *3. "There is nothing in the ADA which prohibits arbitration of ADA claims. In fact, the Act states that arbitration is allowed and encouraged to resolve ADA disputes where appropriate." *Id.* (citing 42 U.S.C. § 12212). "The ADA itself betrays no indication of special hostility to arbitration; to the contrary, the Act states that the use of 'alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under this chapter.'" *Golenia v. Bob Baker Toyota*, 915 F.Supp. 201, 205 (S.D.Cal.1996) (quoting 42 U.S.C. § 12212). Moreover, "[t]he argument that ADA claims require some higher form of waiver than other statutory claims must also be rejected." *Id.*

■ Utilizing the analysis of *Gilmer*, the court also predicts that the Fifth Circuit will hold that parties may lawfully contract to resolve FMLA claims through mandatory arbitration. Agreements to arbitrate statutory claims are enforceable. If Congress intends that they will not be, "it will be discoverable in the text of the [Act], its legislative history, or an 'inherent conflict' between arbitration and the [Act's] underlying purposes." *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. Although the FMLA, unlike the ADA, contains no explicit provision that encourages arbitration, *see* 42 U.S.C. § 12212, the section of the FMLA that confers a private right of action, 29 U.S.C. § 2617(a)(2), contains nothing to suggest that agreements to arbitrate are unenforceable. And Satarino has not pointed the court to legislative history to support such a conclusion, or to an inherent conflict between the FMLA and arbitration. The court therefore holds that contractual agreements to arbitrate FMLA claims are enforceable.

### D

Satarino also argues that the agreements on which Edwards relies should not be enforced because they are adhesive. In *Rojas* the panel rejected the plaintiff's assertion that the employment agreement was an unconscionable contract of adhesion, because her attack was directed to the formation of the contract as a whole, not to the arbitration clause itself. The issue was therefore one to be heard by the arbitrator. *Rojas*, 87 F.3d at 749. Satarino's challenge is similarly directed to the formation of the agreements themselves rather than to the arbitration clauses. *See* P. Rejoinder at 2–3 (arguing that "the adhesive nature of *all such agreements* as those relied upon by Defendant ought to give the Court pause," and that defendant's argument "reinforces the adhesiveness of *the agreements*" (emphasis added)). This argument is to be presented to the arbitrator in accordance with the FAA. *Rojas*, 87 F.3d at 749.

\* \* \*

■ Edwards has correctly asserted that Satarino's claims are subject to compulsory arbitration. Its motion to dismiss is there-

fore granted, and this action is dismissed without prejudice by judgment filed today. *See id.* at 749, 751 (affirming dismissal of Title VII action that was subject to compulsory arbitration).

**SO ORDERED.**