Ronald JONES, Plaintiff,

v.

FUJITSU NETWORK COMMUNICATIONS, INC., Defendant.

No. Civ.A. 399CV1255X.

United States District Court, N.D. Texas, Dallas Division.

Nov. 24, 1999.

---

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Before the Court is Defendant's 12(b)(1) Motion to Dismiss and to Compel Arbitration ("Motion"), filed on August 2, 1999. In the Motion, Defendant seeks to dismiss Plaintiff's complaint and compel arbitration of Plaintiff's claims pursuant to an arbitration policy signed by Plaintiff and Defendant. For the reasons stated below, Defendant's Motion is **GRANTED.**

## I. BACKGROUND

Plaintiff, Ronald Jones, brought suit against Defendant. Fujitsu Network Communications, Inc., alleging a violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601–2654. Plaintiff contends that Defendant terminated him on December 1, 1998, because Plaintiff requested a medical leave of absence. Defendant asserts that as a condition of Plaintiff's continued employment with Defendant, Plaintiff agreed to abide by Defendant's Arbitration Policy and Procedures ("Arbitration Policy"), which requires any dispute between an employee of Defendant and Defendant arising out of the employee's employment agreement with Defendant or the agreement's termination to be the subject of mandatory arbitration Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant moves to dismiss Plaintiff's complaint and compel arbitration pursuant to its Arbitration Policy.

In his response to Defendant's Motion, Plaintiff attacks the enforceability of the Arbitration Policy by arguing that: (1) Congress did not intend for FMLA claims to be subject to arbitration; (2) the arbi-

tration clause at issue does not apply to Plaintiff's FMLA claim because the arbitration clause does not create a clear and unmistakable waiver of the right to a judicial forum; and (3) the arbitration agreement is unenforceable because it does not provide a reasonable substitute for a judicial forum.

## II. ANALYSIS

■ Relying on the federal policy favoring arbitration embodied in the Federal Arbitration Act ("FAA"),[1] the Supreme Court stated in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991), that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." But the Supreme Court also pointed out that the arbitration of claims arising out of employment may be limited in three situations. *See id.* at 26, 33, 111 S.Ct. at 1652, 1655–56; *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 364 (7th Cir.1999). First, if Congress has demonstrated an intention to preclude a waiver of judicial remedies for the statutory rights at issue, the federal courts will not enforce an arbitration agreement. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652. Second, the plaintiff may challenge an arbitration agreement because of a defect in contract formation. *See id.* at 33, 111 S.Ct. at 1655. Third, the plaintiff may challenge the particular arbitration proceedings. *See id.* Therefore, the court must analyze the arbitration agreement at issue in light of these three limitations.

### A. Congress Has Not Shown Any Intention to Preclude Waiver of Judicial Rights for FMLA Claims

■ To determine Congress's intent, the Supreme Court in *Gilmer* directed the trial courts to look to the statute's text and legislative history and to determine whether there is an inherent conflict between arbitration and the statute's stated goals. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652; *see also Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 8 (1st Cir.1999). It is the plaintiff's burden to show that Congress intended to preclude waiver of a judicial forum for FMLA claims. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

Although the FMLA contains no explicit provision that encourages arbitration, the section of the FMLA that grants an employee a private right of action contains nothing to suggest that agreements to arbitrate are unenforceable. *See* 29 U.S.C. § 2617(a)(2). Furthermore, Plaintiff in this case has not pointed to any legislative history that supports such a conclusion or to any inherent conflict between the FMLA and arbitration. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir. 1997) ("Nothing in the [FMLA] suggests that Congress wished to exempt disputes arising under it from the coverage of the FAA."); *Satarino v. A.G. Edwards & Sons, Inc.*, 941 F.Supp. 609 (N.D.Tex.1996) (stating that the FMLA "contains nothing to suggest that agreements to arbitrate are unenforceable."). Therefore, this court holds that contractual agreements to arbitrate FMLA claims are enforceable.

### B. No Defect in Contract Formation

■ The FAA states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds that exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Generally, when deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Therefore, the court looks to Texas law to determine if there was an enforceable arbitration agreement. *See A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C.Cir.1995) ("[A] federal court applies state law when it

---

1. 9 U.S.C. §§ 1–307.

decides an issue not addressed by federal law, regardless of the source from which the cause of action is deemed to have arisen for the purpose of establishing federal jurisdiction."); *cf. Klaxon v. Co. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941) (holding that in diversity cases, the district court applies the choice-of-law rules of the state in which the district court sits).

▮ Plaintiff began working for Defendant in 1987. Defendant implemented the Arbitration Policy in 1994. The Arbitration Policy was therefore a modification of the plaintiff's at-will employment agreement. Under Texas law, either party may impose modifications to an at-will employment contract as a condition of continued employment. *See Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex.1986). The party asserting the modification must still, however, prove that the other party agreed to the modification. *See id.* To prove that the other party agreed to the modification, the party asserting the modification must prove: (1) that the other party had notice of the modification, and (2) that the other party accepted the modification. *See id.*

### 1. Notice

▮ To prove notice, an employer asserting a modification must prove that "he unequivocally notified the employee of definite changes in the employment terms." *Hathaway*, 711 S.W.2d at 229. Furthermore, "the employee must know the nature of the changes and the certainty of their imposition." *Id.*

▮ The initial inquiry is whether the language of Defendant's Arbitration Policy is sufficient to put the plaintiff on notice that the policy covers a dispute arising under the FMLA. The plaintiff relies on the Supreme Court's decision in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), for the notion that Defendant's Arbitration Policy could not require him to waive his right to a judicial forum unless the language of the agreement "clearly and unmistakably" put him on notice that he was waiving the right to bring his FMLA claim in federal court. *See id.* at 396. Plaintiff's reliance on *Wright* in misplaced. The *Wright* decision involved the issue of whether a collective bargaining agreement ("CBA") waived an employee's right to bring an action in court under the Americans with Disabilities Act The Supreme Court stated that "any CBA requirement to arbitrate must be particularly clear." *Id.* Thus, for an arbitration clause in a CBA to waive the right to a judicial forum for employees, "such a waiver must be clear and unmistakable." *Id.* (citing *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983)). The Supreme Court distinguished *Gilmer*, which involved an individual employee's waiver of his own rights, stating that in such cases "the 'clear and unmistakable' standard is not applicable." *Id.* at 397. In the absence of a CBA, this court looks to the standards set forth by the Fifth Circuit to determine whether an arbitration agreement is broad enough to encompass a particular claim. In *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir.1996), the Fifth Circuit held that whenever the scope of an arbitration clause is in question, the trial court should construe the clause in favor of arbitration. In *Rojas*, the Fifth Circuit held that the language "any other dispute" in an arbitration clause was sufficiently broad to encompass the employee's Title VII claim.[2] In this case, Defendant's Arbitration Policy states:

> Any dispute between an employee and Defendant arising out of the employee's employment agreement with the Compa-

---

**2.** *Id.* at 749; *see also Mouton v. Metropolitan Life Ins.*, 147 F.3d 453 (5th Cir.1998) (holding that a securities dealer who agreed to arbitrate "any dispute claim or controversy that may arise between [himself] and [his] firm" is compelled to arbitrate his Title VII discrimination claim against his employer).

ny or its termination, including without limitation any claim of wrongful termination, breach of implied contract, discrimination, unlawful harassment, including sexual harassment, breach of the covenant of good faith and fair dealing, violations of public policy, or any federal or state law, or as to all of the proceeding, any related claims of defamation, or intentional infliction of emotional distress, which are not resolved by the Company and employee through direct discussion or mediation, will be submitted exclusively to final arbitration in accordance with the Company's Arbitration Procedures.

Def.'s Mot. Ex. A. 1, § 1.1 at 2. The Arbitration Policy further states:

[Y]ou and the Company agree to waive your respective rights to a jury or judge trial and instead agree to submit all such disputes exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act. . . . THIS AGREEMENT TO ARBITRATE CONSTITUTES A COMPLETE WAIVER TO A JURY OR JUDGE TRIAL OF ANY OF THE DISPUTES REFERENCED ABOVE.

*Id.* This language is clearly broad enough under the standard in *Rojas* to encompass the plaintiff's FMLA claim.

The next step in determining if Plaintiff had sufficient notice of the Arbitration Policy is to examine the steps that Defendant took to make Plaintiff familiar with the Arbitration Policy. Defendant used three methods to distribute the Arbitration Policy to employees after implementing the policy in 1994. First, Defendant distributed an information packet containing the Arbitration Agreement to every employee, including Plaintiff. *See id.* Ex. A.1. This packet included a memo-

randum from Defendant's President explaining that "participation in this program is mandatory for all employees-continuing and new, full time and part time, regular and temporary-and is a condition of employment." *Id.* A.2 at 2 Second, Defendant held training classes to explain the details of the Arbitration Policy to employees. Plaintiff attended such a training class on October 7, 1999.[3] *See id.* Ex. A.4. Third, Defendant posted information about the Arbitration Policy on Defendant's intranet. Plaintiff had access to the intranet from the computer terminal at his desk. *See* Def.'s Mot. Ex. B. The uncontroverted evidence proves unequivocally that Plaintiff had sufficient notice of the Arbitration Policy.

### 2. Acceptance

If the employee continues working with knowledge of the modification, he has accepted the modification as a matter of law. *See Hathaway,* 711 S.W.2d at 229. The parties do not dispute that Plaintiff continued working for Defendant for several years after Defendant implemented the Arbitration Policy. By continuing to work for Defendant after he received notice of the Arbitration Policy, Plaintiff accepted the arbitration policy as a matter of law. Therefore, Plaintiff's argument that he did not knowingly or voluntarily waive his right to access to a judicial forum is without merit

### C. Adequacy of the Arbitration Proceedings

Arbitration of statutory claims is only effective if potential litigants have an adequate forum in which to resolve their statutory claims. *See Gilmer,* 500 U.S. at 28, 111 S.Ct. at 1653. But if the terms of

---

**3.** Defendant attached a sign-in sheet that included the signature, "R.R. Jones." In her affidavit, Melanie Scofield, Defendant's General Counsel, stated that this signature is that of Plaintiff, Ronald Jones, and that this sign-in sheet includes only the signatures of Defendant's employees who attended a training ses-

sion on the Arbitration Policy held on October 7, 1994. Plaintiff states in his affidavit that he does not remember attending any such meeting, but offers no sworn statement that he did not attend a training session on October 7, 1994, or that the signature on the sign-in sheet was not his.

the arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights, litigants do not have an adequate forum and the policies behind the statute are not served. *See Shankle v. B–G Maintenance Mgmt. of Colo., Inc.,* 163 F.3d 1230, 1234 (10th Cir. 1999); *see also Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1485 (D.C.Cir.1997) (holding that the plaintiff could not be required to agree to arbitrate his public law claims as a condition of continued employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses). Therefore, "an arbitration agreement that prohibits the use of the judicial forum must also provide an effective and accessible alternative forum." *Id.*

 In this case, Plaintiff agreed to the Arbitration Policy as a condition of continued employment, and the Arbitration Policy requires Plaintiff to pay one-half of the arbitrator's fee, the court reporter's fee, the fee for the arbitrator's copy of the transcript, and facility costs. Plaintiff contends that if the arbitration lasts an "average" length of time, he would have to pay between $1,875 and $7,000 to resolve his FMLA claim.[4] The D.C. Circuit noted in *Cole,* 105 F.3d at 1484, that if employees are required to pay arbitral fees in addition to the administrative costs and attorney fees, which accompany both arbitration and litigation, many employees will be unable to pursue statutory claims. Here, Plaintiff, a former worker in Defendant's shipping department, cannot afford such a fee. Thus, while the Arbitration Policy prohibits Plaintiff from using the judicial forum, the prohibitive cost substantially limits the use of the arbitral forum.

Defendant argues that an arbitrator can essentially shift the fees by awarding Plaintiff costs if Plaintiff is successful on the merits. But as the Tenth Circuit pointed out in *Shankle,* it is unlikely that

an employee will risk advancing those fees to access the arbitral forum when faced with a mere possibility of being reimbursed. *See Shankle,* 163 F.3d at 1235 n. 4.

Essentially, Defendant required Plaintiff to agree to mandatory arbitration as a condition of continued employment, but failed to provide an accessible alternative for Plaintiff to present his statutory claims. *See Shankle,* 163 F.3d at 1234. Such a result clearly undermines the deterrent function of the FMLA Therefore, the Court concludes that under the FAA, the fee-splitting provision of the Arbitration Policy is unenforceable, but enforces the remainder of the Arbitration Policy pursuant to its severability clause.

## III. CONCLUSION

For the reasons stated above, Defendant's 12(b)(1) Motion to Dismiss and Compel Arbitration is **GRANTED.** It is

**ORDERED** that Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE.** It is further

**ORDERED** that each party shall bear its costs for this case. It is further

**ORDERED** that the parties shall arbitrate this dispute based upon the Arbitration Policy agreed to by the parties. However, it is

**ORDERED** that Defendant shall pay for all arbitrator and facility fees.

It is **SO ORDERED.**

---

4. *See Cole,* 105 F.3d at 1480 n. 8. ("CPR Institute for Dispute Resolution estimates that arbitrators' fees of $250–$350 per hour and 15–40 hours of arbitrator time in a typical employment case, for a total arbitrators' fees of $3,750 to $14,000.") (citation omitted).