**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-21022
Summary Calendar
_____

EDDIE L. PRATT,

Plaintiff-Appellant,

versus

JOE MYERS MOTORS-THREE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Texas
(No. 99-CV-3951)
_____
May 18, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Plaintiff-Appellant Eddie L. Pratt ("Pratt") appeals the dismissal of her employment-discrimination lawsuit against Defendant-Appellee Joe Myers Motors-Three, Inc. ("Joe Myers"). As we agree with the district court that the parties are bound by a valid arbitration agreement which bars litigation of Pratt's claims, we affirm.

I.

[1]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

FACTS AND PROCEEDINGS

Pratt filed suit against her former employer, Joe Myers, alleging employment discrimination on the basis of sex and race. Joe Myers filed a motion to dismiss Pratt's claims on the ground that they were barred by an arbitration agreement between the parties contained in the "Dispute Resolution Program" (the "Plan") set forth in an employee handbook received by Pratt at the beginning of her employment. The Plan unambiguously states that it is the "exclusive procedural mechanism for the final resolution of all disputes falling within its terms."

The district court converted the motion to dismiss into a motion for summary judgment. In its initial memorandum opinion and order, the district court determined that the Plan comprises an agreement to arbitrate that encompasses this employment-discrimination dispute. Noting that (1) by its terms, the Plan is binding only on "the Company," which is defined by the Plan as "Joe Myers Dealerships," its subsidiaries, and "any electing entity," (2) "Joe Myers Dealerships" is not a legal entity, and (3) no party submitted evidence that Joe Myers Motors-Three, Inc. is either a subsidiary of "Joe Myers Dealerships" or an "electing entity," the district court concluded that it was uncertain whether a contract existed between Joe Myers and Pratt. Accordingly, the district court denied Joe Myers's motion for summary judgment, ordered

arbitration on this sole issue,[2] and stayed the proceedings. The district court made clear that if the arbitrator determined that both parties are bound by the terms of the Plan, then Pratt's lawsuit must be dismissed.

After the arbitrator determined that both parties were bound by the Plan, the district court entered a second memorandum opinion and order in response to Pratt's objection to arbitration and motion for reconsideration. The district court denied Pratt's motions after concluding that "there are no legal constraints external to the parties' agreement that foreclose arbitration of Pratt's claims." The district court subsequently dismissed Pratt's case with prejudice, and this appeal followed.

II.

ANALYSIS

A.   Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.[3] Under the familiar summary-judgment standard, a motion for summary judgment is properly granted only if there is no genuine issue as to any

---

[2]A challenge to the formation of the contract in general rather than to the validity of the arbitration clause must be decided by arbitration under the Federal Arbitration Act ("FAA"). See R.M. Perez & Assoc., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1992).

[3]Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 (5th Cir. 1999).

material fact.[4]  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[5]  Furthermore, we must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[6]

B.    Existence of a Valid Arbitration Agreement

Pratt challenges the district court's ruling that the parties are bound by an arbitration agreement that bars litigation of her employment-discrimination suit.  To determine the merits of this claim, we must conduct a two-step inquiry.  First, we must determine whether the parties agreed to arbitrate this dispute; second, if we conclude that the parties agreed to arbitrate, we must consider whether any federal statute or policy renders the claims nonarbitrable.[7]

1.    Agreement to Arbitrate

Pratt raises two objections to the district court's determination that the parties are bound by an agreement to arbitrate.  First, Pratt challenges, on various grounds, the existence of a contract between her and Joe Myers.  Second, Pratt

---

[4]Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[5]See Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[6]Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) (citations omitted).

[7]See R.M. Perez, 960 F.2d at 538 (citation omitted).

4

contends that even if the Plan is a valid contract, it is not an agreement to arbitrate because the language of the Plan, according to Pratt, makes arbitration voluntary rather than mandatory. We will consider each argument in turn.

### a. Challenge to the Contract

Pratt argues that there is no contract between her and Joe Myers because (1) the plain language of the Plan excludes Joe Myers and Pratt as parties to the Plan, and (2) by not legally binding itself to the Plan when Pratt was hired, Joe Myers provided only "illusory promises" which cannot serve as consideration. We need not linger long over Pratt's challenge to the existence of a contract because, as an attack on the formation of the contract in general rather than just on the arbitration clause, this claim is itself subject to arbitration under the FAA.[8] Accordingly, the district court did not err in submitting this issue to arbitration, or in denying Pratt's motion to vacate the arbitrator's ruling that both she and Joe Myers are bound by the terms of the Plan.

We also note that the district court, in its second memorandum and order, alternatively based its ruling on the following admissions made by Pratt in her amended complaint:

> When hired by [Joe Myers] on or about May 18, 1998, [Pratt] received and acknowledged receipt of an employee handbook. <u>The employee handbook contained and described a Dispute Resolution Program [the Plan] that conferred on [Pratt] certain contractual rights</u>. According to the

---

[8]<u>See</u> <u>Rojas v. TK Communications, Inc.</u>, 87 F.3d 745, 748 (5th Cir. 1996).

> handbook and [Pratt's] written acknowledgment, arbitration of Pratt's employment dispute was optional and not mandatory.

(emphasis added). Pratt's response to Joe Myers's motion for summary judgment similarly avers that she "does not dispute that the Plan <u>confers contractual rights and obligations</u> upon [Pratt] and [Joe Myers]. In fact, [Pratt] sues [Joe Myers] for violating her contractual rights . . . <u>including those under the Plan</u>" (emphasis added). Accordingly, the district court concluded that Pratt has admitted the existence of a contract between her and Joe Myers.

On appeal, Pratt denies that her statements qualify as judicial admissions, and insists that her pleadings only "hypothetically allege . . . the existence of an additional written contract." Pratt's attempt to characterize her assertions as nothing more than "alternative legal theories," however, is specious at best. We agree with the district court that, in addition to the finding of an existing contract by the arbitrator, Pratt has admitted the existence of a contract between her and Joe Myers.

### b. <u>Exclusivity of the Arbitration Remedy</u>

Pratt further contends that even if the Plan is a valid contract, it is not an agreement to arbitrate because the language of the Plan, according to Pratt, makes arbitration voluntary rather than mandatory. In support of her contention that the Plan "expressly authorizes judicial action," Pratt points to the

6

following provision:

> Proceedings under the Plan shall be the exclusive, final and binding Method by which Disputes are resolved. Consequently, the institution of a proceeding under this Plan shall be a condition precedent to the initiation of any legal action (including action before an administrative tribunal with adjudicatory powers)[9] against the Company and any such action shall be limited to those under the [Federal Arbitration] Act.

(emphasis added). Pratt then argues that § 4 of the FAA, which provides, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof[,]"[10] requires us to remand this case for a jury trial on the issue of arbitrability.

Pratt, however, "cherry-picks" certain provisions of the FAA that appear to support her position while ignoring others that manifestly undercut it. For example, Pratt seizes on § 4's provision for a jury trial when the "making" of the arbitration agreement is at issue, but ignores the surrounding language which makes clear that this provision of the FAA applies in the context of an action to compel arbitration:

> [A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration . . . may petition any United States district court which, save for such agreement, would have

---

[9]The next paragraph of the Plan clarifies that "it is not intended nor does it limit in any manner the rights of an employee to file a claim with the Equal Employment Opportunity Commission or the Texas Human Rights Commission."

[10]9 U.S.C. § 4.

7

jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . filed. <u>If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue</u>, the court shall proceed summarily to the trial thereof.[11]

Accordingly, the "legal action" contemplated by the FAA (and thus permitted by the Plan) is a petition for an order to compel arbitration, and not, as Pratt would have it, a freestanding "judicial challenge . . . to the 'making' of the arbitration agreement[.]"

In further support of her contention that the Plan offers arbitration only as an option and not a requirement, Pratt relies on the following paragraph of the Plan:

> If the dispute involves a legally protected right, such as protection against age, race, sex discrimination, sexual harassment or claims for retaliation and has not been resolved in Options One [the "Open Door Policy," or complaining through the chain of command], Two [the "Conference," or meeting with a company representative], or Three ["Mediation"], you or the Company <u>may</u> request arbitration. While you do not have to go proceed through each of the options in their exact numerical order, the Program is designed with multiple steps to maximize the possibility of resolution prior to Option [F]our ["Arbitration"]. All outside dispute resolution processes in this program will use neutral parties provided through the American Arbitration Association.

(emphasis added). More specifically, Pratt contends that the phrase "you or the Company may request arbitration" can be interpreted to mean that arbitration is merely an option, and not a requirement.

---

[11]<u>Id.</u> (emphasis added).

As an initial matter, we note that federal law, comprising generally accepted principles of contract law, governs the interpretation of an arbitration clause subject to the FAA; we look to state law only to shape these general principles.[12] Relying on these familiar principles, we will enforce a contract according to its plain meaning, unless such a reading would defeat the intentions of the parties.[13] In construing a written contract, we must give effect to the intentions of the parties as expressed in the instrument.[14]

Here, the Plan states unequivocally that it is "intended to create an exclusive procedural mechanism for the final resolution of all disputes falling within its terms." The Plan also provides that both the employees and the employer "will be bound to use [the Plan] as the primary and sole means of dispute resolution." As we have already observed, the Plan clearly states that "[p]roceedings under the Plan shall be the exclusive, final and binding method by which Disputes are resolved." And there can be no doubt that the agreement to arbitrate encompasses Pratt's employment discrimination claims, as the Plan makes clear that it applies, inter alia, to "any legal or equitable claim . . . including . . .

---

[12]See Neal v. Hardee's Food Systems, Inc., 918 F.2d 34, 37 n.5 (5th Cir. 1990).

[13]Id. at 37.

[14]State Farm Fire & Casualty Insurance Co. v. Keegan, 209 F.3d 767, 768 (5th Cir. 2000) (citation omitted).

allegations of: discrimination based on race, sex . . . [or] sexual harassment."

Pratt's reading of the phrase "you or the Company may request arbitration" to mean that arbitration is merely optional is certainly correct in the sense that the Plan does not require that each and every dispute be arbitrated. It simply does not follow, however, that if, under the Plan, arbitration is optional, then so too is litigation. To the contrary, the Plan expressly limits "any legal action" to that provided for in the FAA, which in turn provides only, under these circumstances, for an action to compel arbitration.

In sum, we are convinced that the obvious intention of the parties under the Plan was to submit any employment dispute that might arise —— and not be resolved amicably —— to alternative dispute resolution procedures rather than to resort to traditional means of litigation to resolve disputes that could not be disposed of amicably. We are equally persuaded that, even after according proper summary-judgment deference to Pratt, the plain language of the Plan will admit of no other interpretation than that Pratt is barred from pursuing her grievances through litigation. Accordingly, the summary-judgment record amply supports the district court's conclusion that both parties are bound by an agreement to arbitrate that encompasses this dispute.

   2.   <u>Whether any Federal Statute or Policy Renders Pratt's Claims Nonarbitrable</u>

Pratt correctly states that even if we conclude that the arbitration agreement is otherwise enforceable, we must also consider whether any federal statute or policy renders her claims nonarbitrable.[15] In the instant case, Pratt directs us to a Ninth Circuit case, Craft v. Campbell Soup Co., which held that Congress did not intend the FAA to apply to employment contracts.[16] But after the parties had filed their briefs in this appeal, the Supreme Court overruled Craft in Circuit City Stores, Inc. v. Adams, which squarely held that the FAA applies to employment contracts.[17] In any event, the law is well established in this circuit that employment contracts are subject to the FAA.[18] Accordingly, Pratt's sole argument with respect to whether any federal statute or policy renders her claims nonarbitrable is foreclosed by binding precedent.

III.

CONCLUSION

For the reasons announced above, the district court's dismissal of Pratt's claims with prejudice is

AFFIRMED.

---

[15]See R.M. Perez, 960 F.2d at 538.

[16]177 F.3d 1083, 1091 (9th Cir. 1999) (overruled by Circuit City Stores, Inc. v. Adams, --- U.S. ---, 121 S. Ct. 1302 (2001)).

[17]Id. at 1306.

[18]See Rojas, 87 F.3d at 749.

11